**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF VIRGINIA**
**HARRISONBURG DIVISION**

| | | |
|---|---|---|
| SAMUEL JOSEPH ORLANDO, | ) | |
| 47 South Windsong Court | ) | |
| Fishersville, Virginia 22939 | ) | Case No.   5:22-cv-00062 |
| | ) | |
|     Plaintiff, | ) | |
| | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| SHERIFF DONALD L. SMITH, in his | ) | |
| individual capacity, | ) | |
| 127 Lee Highway | ) | |
| Verona VA, 24482 | ) | |
| | ) | |
| | ) | JURY TRIAL DEMANDED |
| MAJOR BRIAN JENKINS, in his | ) | |
| individual capacity, | ) | |
| 127 Lee Highway | ) | |
| Verona VA, 24482 | ) | |
| | ) | |
| BRISTOL NEAL, | ) | |
| 331 Windsor Drive | ) | |
| Fishersville VA,22939 | ) | |
| | ) | |
|     and; | ) | |
| | ) | |
| REBECCA BYRD NEAL, | ) | |
| 331 Windsor Drive | ) | |
| Fishersville VA,22939 | ) | |
| | ) | |
|     Defendants. | ) | |

1

## COMPLAINT

Plaintiff, SAMUEL JOSEPH ORLANDO, files this Complaint against Defendants Augusta County SHERIFF DONALD L. SMITH, Augusta County Sheriff MAJOR BRIAN JENKINS, as well as BRISTOL NEAL and REBECCA BYRD NEAL, utilizing 42 U.S.C. § 1983 as the statutory vehicle to vindicate his rights under the First, Fourth, and Fourteenth Amendment of the U.S. Constitution against the Sheriff Defendants, and 18 U.S.C § 2255 and other applicable Virginia law against the NEAL Defendants, and all other applicable laws. In support thereof, Plaintiff states as follows:

### INTRODUCTION

1.      The claims in this case against the Sheriff Defendants arise from the actions taken in the ascertaining and execution (October 5, 2022) of a search warrant issued by an Augusta County magistrate [see CM22000412-00] for the home where Plaintiff SAMUEL ORLANDO resides.

2.      The claims in this case against the NEAL Defendants arise from the sexual molestation of Plaintiff SAMUEL ORLANDO by Defendant BRISTOL NEAL, abuse which was facilitated by Defendant REBECCA NEAL.

3.      When Plaintiff was eleven (11) years old, the NEAL Defendants facilitated the Plaintiff crossing state lines for the purposes of further subjecting the Plaintiff to sexual abuse under the age of twelve (12).

4.      The abuse continued until Plaintiff turned sixteen (16) years old.

## PARTIES

5.      Plaintiff SAMUEL ORLANDO is a resident of Augusta County, Virginia.

6.      Plaintiff SAMUEL ORLANDO was born on August 13, 2003.

7.      Thus, Plaintiff SAMUEL ORLANDO did not reach the age of eighteen (18) years old until August 13, 2021.

8.      Plaintiff is a resident of Augusta County, Virginia, who moved to Virginia from Illinois in 2015 when Plaintiff was eleven (11) years old.

9.      Defendant SHERIFF DONALD L. SMITH ("SHERIFF SMITH") is the elected official in charge of the Augusta County Sheriff's Office ("Sheriff's Office") and otherwise is a resident of Augusta County, Virginia.

10.     Defendant SHERIFF SMITH, in his individual capacity, is a "person" for purposes of 42 U.S.C. § 1983.

11.     Defendant MAJOR BRIAN JENKINS ("MAJOR JENKINS") is an employee of the Sheriff's Office and otherwise is a resident of Augusta County, Virginia.

12.     Defendant MAJOR JENKINS is a "person" for purposes of 42 U.S.C. § 1983.

13.     Defendant REBECCA NEAL is a resident of Augusta County, Virginia.

14.     Defendant BRISTOL NEAL is a resident of Augusta County, Virginia.

15.     Defendant BRISTOL NEAL was born on March 12, 2000.

16.     Defendant BRISTOL NEAL turned eighteen-years-old on March 12, 2019.

17.     Defendant BRISTOL NEAL is a resident of Augusta County, Virginia.

## JURISDICTION

18.   Plaintiff asserts claims based on federal law (against the Sheriff Defendants and the NEAL Defendants) as well as related legal claims based on Virginia law (against both the Sheriff Defendants and the NEAL Defendants).

19.   Accordingly, this Court has subject-matter jurisdiction pursuant to 28 U.S.C. § 1331 (federal-question jurisdiction) and 28 U.S.C. § 1367 (supplemental jurisdiction).

20.   All parties are residents or citizens of Virginia, and most of the relevant events occurred in Virginia.

21.   A substantial part of the events and omissions giving rise to Plaintiff's claims occurred within this District and Division and Defendants reside and/or transact business in this District and Division.

22.   Therefore, this Court has personal jurisdiction over all the parties named in this action.

## VENUE

23.   All the Defendants reside in Augusta County, Virginia, and the relevant events at issue in this case took place in Augusta County and Lynchburg, Virginia.

24.   Therefore, venue is proper in this Court pursuant to 28 U.S.C. § 1391(b)(1) and (2).

25.   Given the location of the parties, filing in the Harrisburg Division of this District Court is appropriate.

**FACTS**

**Summary of Complaint**

26.    In summary: Sheriff Donald L. Smith has conducted illegal arrests and illegal searches in an effort to shut down protests, punish young activists, and hide evidence of the Sheriff's criminal behavior. Illegal arrests of Plaintiff SAMUEL ORLANDO will fail to stop his activism and his complaints personally against Defendant SHERIFF SMITH, but the Sheriff's Defendants' efforts to harm the Plaintiff have curbed his exercise of his First, Fourth, and Fourteenth amendment rights, resulting in significant damage to the Plaintiff.

27.    The following is a timeline of the relevant facts in this Complaint:



28.    Accordingly, Defendant SHERIFF SMITH and his deputy MAJOR JENKINS responded to Plaintiff SAMUEL ORLANDO's political speech with an illegal search and by criminally exposing the identity of a juvenile sex assault victim. When arresting ORLANDO wouldn't shut him up, they decided to conspire with his abusers and publicly cast ORLANDO, the juvenile victim of horrific child sexual assault at the hands of the Sheriff's friends, as some sort of aggressor. To do so they inverted the ages of ORLANDO, the actual victim, and the abuser BRISTOL NEAL when applying for their search warrants.

### The prior history between Plaintiff ORLANDO and the Sheriff Defendants

29.    Plaintiff SAMUEL ORLANDO is a political, social-justice, and police-accountability activist, advocating on behalf of such causes as Black Lives Matter as well as other issues.

30.    Plaintiff SAMUEL ORLANDO has participated in, conducted, and led political protests against Sheriff's Office as well as DEFENDANT SHERIFF SMITH specifically, since before Plaintiff SAMUEL ORLAND was even an adult.

31.    Some of the specific allegations and charges Plaintiff SAMUEL ORLANDO and other BLM activists have alleged against Sheriff's Office include that ACSO deputy sheriffs had sexually molested teens, including the son of a former county official, and that Sheriff Smith covered up the allegations. [***See Exhibit A: CL22000002-00 Lynchburg Circuit Court / Orlando v. Michael, copy of complaint***]

6

32.  Some of the specific allegations and charges Plaintiff SAMUEL ORLANDO and other BLM activists have alleged against DEFENDANT SHERIFF SMITH personally include that Sheriff Smith was in a romantic relationship with Felix Chujoy, a felon convicted of several charges in a human trafficking prosecution, and that he had helped hide Chujoy from arrest after he had been indicted on charges related to the distribution of methamphetamine. [CL22000002-00 Lynchburg Circuit Court] See also *United States v. Chujoy*, 207 F. Supp. 3d 626 (W.D. Va. 2016).

33.  Some of the specific allegations and charges Plaintiff SAMUEL ORLANDO and other BLM activists have alleged against DEFENDANT SHERIFF SMITH personally include that Sheriff Smith was in a romantic relationship with Felix Chujoy, when Chujoy was arrested by Staunton Police for Soliciting Sex from a Minor. The protestors further allege that Defendant SMITH arranged for Chujoy's bond, and then permitted Chujoy to borrow his cell phone and vehicle. [CL22000002-00 Lynchburg Circuit Court] See also *United States v. Chujoy*, 207 F. Supp. 3d 626 (W.D. Va. 2016).

34.  Plaintiff SAMUEL ORLANDO has asserted in a lawsuit filed in Lynchburg Circuit Court that members of a local BLM organization had learned that DEFENDANT SHERIFF SMITH used the words "nigger" and "porch monkey" to describe African Americans while he was a leader of the County's TAC (tactical) team. [CL22000002-00 Lynchburg Circuit Court] This information was provided by multiple Augusta County Sheriffs deputies, several of whom will testify in this action.

35.  When Plaintiff SAMUEL ORLANDO was still a juvenile (17-years-old), he was charged by the Sheriff's Office for violating a noise ordinance during one of these

protests.

36.   Defendant DONALD L. SMITH charged the seventeen-year-old Plaintiff as an adult, using a form that created a case record in the General District Court of Augusta County.

37.   This created a public record exposing juvenile criminal history information, in violation of State law. [**EXHIBIT B: General District Court Record of Orlando Juvenile Arrest**]

38.   This noise-ordinance charge did not stop Plaintiff SAMUEL ORLANDO from continuing to exercise his right to political speech, but it has significantly chilled his ability to exercise his speech in Augusta County, because of the Sheriff defendants' actions.

39.   For example, Plaintiff SAMUEL ORLANDO continues to lead rallies and maintains a website specifically criticizing Defendant SHERIFF SMITH. [See https://www.tigerkingsheriff.com/.] However, ORLANDO has become a target of violence because of the actions of the Sheriffs Defendants, which limits when and where ORLANDO and his fellow activists can protest safely, and without being subjected to unconstitutional arrest.

40.   Defendant SHERIFF SMITH has described Plaintiff SAMUEL ORLANDO, his family, and the business at which they work as people who "[aren't] really from here" and people the Board "shouldn't listen to" in an open forum of the

Augusta County Board of Supervisors.[1]

41.   Defendant SHERIFF SMITH has made opposing the family's business a feature of his political campaign in the past, singling Nexus out in his victory speech, claiming that Nexus, their employees, and the people Nexus represents "hate [him], his [family]" and that they "hate truth." [2]

42.   On November 10, 2021, Plaintiff SAMUEL ORLANDO filed a criminal complaint alleging years of sexual abuse at the hands of the NEAL Defendants.

43.   Sheriff Smith did not investigate the offense, and did not follow up with Plaintiff ORLANDO. ORLANDO received a protective order from the Augusta County General District Court.

44.   According to the Jenkins' Affidavit, Defendant Sheriff DONALD SMITH met with ORLANDO's abusers the ***next day,*** and he began building a ruse for the illegal search ultimately executed by his deputies on October 5, 2022.

45.   On January 2nd, 2022, Plaintiff SAMUEL ORLANDO filed a criminal complaint against Defendant DONALD L. SMITH for violating Virginia Code Section 9.1-135, related to sharing his criminal history information.

46.   Plaintiff SAMUEL ORLANDO filed his criminal complaint at the Lynchburg, Virginia magistrate's office. Orlando and his family (and other BLM

---

[1]   See   https://www.facebook.com/AugustaCountyVA/videos/1042456299969856/ (presentation Sheriff Smith's history of grievances with the Donovan/Moore family beginning approximately at timestamp 1:45:00 until 1:52:00).

[2]                                                                See,                                                        e.g., https://www.newsleader.com/story/news/local/2019/11/06/video-sheriff-donald-smith-goes-after-nexus-speech-supporters/2506283001/

protestors) have been advised that a conflict exists with almost all of the magistrates in the 25th judicial district. Orlando and his family had been advised they can seek assistance from a magistrate by driving to Lynchburg or Roanoke.

47.    The magistrate refused to hear ORLANDO's criminal complaint.

48.    ORLANDO filed suit against the magistrates on January 4th, 2022.

49.    After filing his lawsuit, Orlando was granted a hearing on his allegations by the magistrate systems Region 2 Regional Manager.

50.    The charge was not issued because of what the magistrate described as an inability to prove whether SMITH intentionally disclosed ORLANDO's information, or perhaps committed an error from gross negligence.

51.    On February 11, 2022, the Commonwealth's attorney's motion to quash SMITH's, and others, witness subpoenas at the protestors' trial was denied, setting the stage for SMITH to be subjected to cross examination about his biases and concerning whether he lied to federal agents or a federal Grand Jury during a human trafficking case (See United States of America v. Felix Adriano Chujoy).

52.    On August 3rd, 2022, a continuance was granted in the protestors' General District Court trials, and the final trial date was set for September 2nd, 2022.

53.    On September 1st, 2022, Smith arranged another meeting with ORLANDO's abusers. According to the Affidavit, SMITH used this interview to ask follow-up questions in advance of the filing of the affidavit. **ONE DAY before** the protestors' noise ordinance trials, Sheriff SMITH further conspires with ORLANDO's abusers to affect a terrifying raid on the home of a victim of years of child sexual abuse,

abuse that was ignored by the Augusta County Sheriff's Office.

54.   ORLANDO has learned that if you stand up to law enforcement in Augusta County, the Sheriff and some of his deputies will lie on affidavits, conspire with child predators, and stop at nothing to cause harm to a victim of child sexual abuse.

55.   ORLANDO refuses to be further silenced by corrupt law enforcement or to further allow the actions of corrupt law enforcement to exacerbate the damage caused by years of sexual molestation, crimes SMITH and his office refused to investigate.

56.   As such, SAMUEL ORLANDO files this complaint to vindicate his rights.

**Defendant BRISTOL NEAL'S
Sexual Abuse of Plaintiff SAMUEL ORLANDO**

57.   Defendant Plaintiff SAMUEL ORLANDO was a resident of the State of Illinois in 2015, when he moved to Virginia with the NEAL Defendants for the summer. [*See EXHIBIT C: Samuel Orlando Affidavit*]

58.   Defendant BRISTOL NEAL is the son of Defendant REBECCA NEAL.

59.   SAMUEL ORLANDO met Defendant BRISTOL NEAL in Illinois in 2014, where the two became friends. Id.

60.   Plaintiff SAMUEL ORLANDO enjoyed spending time with BRISTOL NEAL, in part because NEAL's parents would permit the pair to do just about anything. Id.

61.   A few months after meeting, in the Fall of 2014, Defendant BRISTOL NEAL first molested the eleven-year-old ORLANDO. The molestation began as touching and oral sex. Id.

62.   In or around January of 2015, Plaintiff SAMUEL ORLANDO was molested by Defendant BRISTOL NEAL in the home of his parents in Plano, IL. Defendant REBECCA NEAL walked in during the molestation. NEAL immediately left the room, leaving eleven-year-old ORLANDO in the room with his fourteen-year-old abuser. ORLANDO decided he would never return to the home. Id.

63.   The next morning, Defendant REBECCA NEAL told Plaintiff SAMUEL ORLANDO that he could not tell anyone about what defendant BRISTOL NEAL had done to him. Defendant REBECCA NEAL told Plaintiff SAMUEL ORLANDO that on one hand the forced sex acts were normal, but on the other hand that he mustn't tell anyone about the behavior or it could hurt her son. Id.

64.   When Plaintiff ORLANDO declined to return to the NEAL home, Defendant BRISTOL NEAL told Plaintiff that his mother wanted to speak with ORLANDO. Defendant REBECCA NEAL told Plaintiff ORLANDO that her son was sick and that if ORLANDO didn't spend time with him that he might hurt himself, and that would be ORLANDO's fault. Id.

65.   Late in 2014 or early 2015 Defendant BRISTOL NEAL asked the Plaintiff to accompany him on a trip to Virginia, where the Neal family was moving. Id.

66.   Plaintiff SAMUEL ORLANDO, who was eleven (11) years old at the time, told Defendant BRISTOL NEAL, who was fourteen (14) years old, that he was already freaked out by the things Defendant BRISTOL NEAL was manipulating Plaintiff Samuel ORLANDO to do. Id.

67.   Plaintiff was approached by Defendant REBECCA NEAL, who told him

she was worried that Defendant BRISTOL NEAL might hurt himself if ORLANDO did not accompany them to Virginia. Id.

68.   Plaintiff SAMUEL ORLANDO complained that he was uncomfortable with Defendant BRISTOL NEAL's obsession with him and the things she had witnessed her son doing to him. Id.

69.   Defendant REBECCA NEAL responded that this is "normal behavior" for young boys. Id.

70.   Defendant REBECCA NEAL told Plaintiff ORLANDO that the behavior would stop and that ORLANDO could be comfortable attending the trip to Virginia. Id.

71.   Contrary to Defendant REBECCA NEAL's assertions to Plaintiff ORLANDO, the abuse continued and increased in frequency after the NEAL defendants brought Orlando across state lines from Illinois to Virginia. Id.

72.   Defendant BRISTOL NEAL began molesting Plaintiff SAMUEL ORLANDO, beginning when Plaintiff SAMUEL ORLANDO was eleven (11) years old and ending when Plaintiff SAMUEL ORLANDO was sixteen (16) years old (correspondingly, beginning when Defendant BRISTOL NEAL was fourteen (14) years old and ending when Defendant BRISTOL NEAL was nineteen (19) years old). Id.

73.   Plaintiff SAMUEL ORLANDO has a recording of a portion of one of the last times he was molested. Id.

74.   The audio recordings demonstrate Defendant BRISTOL NEAL trying to force Plaintiff SAMUEL ORLANDO to do very disgusting and dangerous sex acts. Id.

75.   During the entirety of the molestation, when Plaintiff SAMUEL

13

ORLANDO said, "NO," Defendant BRISTOL NEAL would threaten to tell Orlando's mother, or Plaintiff SAMUEL ORLANDO's girlfriend that he had engaged in homosexual sex. Id.

76.   The only way Plaintiff SAMUEL ORLANDO could maintain privacy over his sexual orientation was to permit Defendant BRISTOL NEAL to perform vile acts on Plaintiff SAMUEL ORLANDO, including analingus and sexual acts involving feces. Id.

77.   As Defendant BRISTOL NEAL's demands grew darker and more dangerous, Plaintiff SAMUEL ORLANDO refused to spend time with him. Id.

78.   Defendant REBECCA NEAL, mother of Defendant BRISTOL NEAL, was aware of the sexual abuse, having walked in on one such act when Plaintiff SAMUEL ORLANDO was eleven (11) years old in Illinois. Id.

### The prior history between the NEAL Defendants and Plaintiff SAMUEL ORLANDO's guardian family

79.   Plaintiff SAMUEL ORLANDO is the son of Mike Donovan and Richard Moore, a married couple. [*See EXHIBIT D: Erik Schneider Affidavit*]

80.   Plaintiff SAMUEL ORLANDO lives with his guardians at their home, 47 South Windsong Court, Fishersville, Virginia ("the Residence"). ORLANDO considers DONOVAN and MOORE as his parents, and refers to them as such.

81.   Donovan and Moore own and operate multiple businesses, including Augusta County businesses named Nexus Services Incorporated ("Nexus") and Nexus Commercial Ventures LLC. Id.

82.   Defendant REBECCA NEAL is the former CFO of Nexus, who was

14

demoted to an auditor position. Id.

83.   Subsequent to discovering inappropriate text messages between Defendant REBECCA NEAL and Plaintiff SAMUEL ORLANDO, on November 9th, 2021, Michael Donovan, Plaintiff SAMUEL ORLANDO's father, terminated Defendant REBECCA NEAL's employment with Nexus Services. Id.

**The NEAL Defendants extortion of
Plaintiff SAMUEL ORLANDO's silence**

84.   Defendant REBECCA NEAL told Plaintiff SAMUEL ORLANDO he could never tell his mother about what had happened, and that it was a secret between Plaintiff SAMUEL ORLANDO and her son. [*See EXHIBIT C: Samuel Orlando Affidavit*]

85.   At several times during the abuse, both in Illinois and in Virginia, BRISTOL NEAL would threaten ORLANDO that his participation in homosexual sex activities would be divulged to his mother and his girlfriend, if ORLANDO refused to engage in more and varying types of sexual acts. Id.

86.   When ORLANDO refused to spend time with Defendant BRISTOL NEAL, Plaintiff would receive abusive text messages from Defendant BRISTOL NEAL, abusive social media messages from Defendant BRISTOL NEAL, and abusive text messages from Defendant REBECCA NEAL. Id.

87.   As the molestation grew in frequency and severity, Defendant REBECCA NEAL told Plaintiff SAMUEL ORLANDO that if he did not "spend time with Bristol" and "make Bristol happy," then Defendant BRISTOL NEAL might kill himself, and his death would be Plaintiff SAMUEL ORLANDO's fault. Id.

88.   In the Summer of 2015 Plaintiff SAMUEL ORLANDO told Defendant BRISTOL NEAL that he could no longer participate in sexual acts and that he wanted to go home to his mother in Illinois. Id.

89.   Plaintiff was then approached by Defendant REBECCA NEAL, who told him that she couldn't afford to send him home and that if he called his mother to come get him he would get in a lot of trouble. Id.

90.   REBECCA NEAL refused to explain to ORLANDO what she meant by "a lot of trouble", and ORLANDO interpreted her statement to mean that her son would make good on his threats. Id.

91.   ORLANDO's relationship with his mother is critically important to him. ORLANDO perceived that his mother, who holds conservative Christian values, would react negatively to being told her son engaged in homosexual activity. Id.

92.   Since REBECCA NEAL told him the abuse was normal, ORLANDO felt hopelessly trapped as he was being subjected to vile and disgusting child sexual abuse each and every night at the residence of the NEAL Defendants. Id.

93.   On November 8, 2019, Plaintiff SAMUEL ORLANDO was molested by Defendant BRISTOL NEAL and Plaintiff SAMUEL ORLANDO recorded, via audio recorder, a portion of that crime. Id.

94.   After the November 8, 2019 incident, Plaintiff told Defendant BRISTOL NEAL that he would no longer do the things he wanted him to do, and that if he continued to threaten him that he would tell Donovan and Moore what he and his mother had done.

16

95. During the November 8, 2019 incident, Plaintiff SAMUEL ORLANDO was (16) sixteen-years-old and Defendant BRISTOL NEAL was 19 nineteen-years-old.

96. Defendant BRISTOL NEAL told Plaintiff SAMUEL ORLANDO throughout the molestation that if he did tell anyone what happened he would destroy his life and cause him to lose everything he had. Id.

97. Defendant Bristol NEAL told Plaintiff SAMUEL ORLANDO that if he would not "be with him," he would "take everything [Plaintiff SAMUEL ORLANDO] own[ed]." Id.

### Plaintiff SAMUEL ORLANDO leaves the NEAL Defendants' residence and lives with his guardians Michael Donovan and Richard Moore

98. During the summer of 2015, Plaintiff ORLANDO and Defendant BRISTOL NEAL met with Mike Donovan at Nexus at the behest of REBECCA NEAL, after Plaintiff and BRISTOL NEAL were accused of damaging property. [*See EXHIBIT C: Samuel Orlando Affidavit*]

99. Mr. Donovan hired counsel for NEAL and ORLANDO who arranged for an accord in satisfaction to resolve the damages at issue in the complaint. Mr. Donovan told REBECCA NEAL that as a condition of helping, the young men needed to receive treatment or get help to divert delinquent activities, like damaging personal property. Id.

100. Following the resolution of the misdemeanor criminal matter, ORLANDO asked Donovan if his mother could ever work for Nexus. ORLANDO could no longer live with the NEALS and endure daily sexual abuse but was afraid to disclose the abuse. [*See EXHIBIT C: Samuel Orlando Affidavit*]

101. On August 4th, 2015, Plaintiff Orlando's mother moved to Virginia and began working with Serve by Nexus in Harrisonburg. Plaintiff ORLANDO was able to move out of the NEAL residence and into a townhome with his mother. Id.

102. While moving in with his mother lessened the frequency of the sexual abuse, ORLANDO was still subject to molestation two to three times per week, and the sexual activities became more and more perverse. Id.

103. The sexual acts, which started with acts involving choking and the infliction of pain, transcended to biologically unsafe sexual acts involving fecal matter. Id.

104. REBECCA NEAL told ORLANDO as he left her residence to make sure he "remembered what would happen" if he told "his and Bristol's secrets". At this time ORLANDO was twelve (12) years old and BRISTOL NEAL was turning sixteen (16). Id.

105. ORLANDO was a child victim of sexual abuse at the hands of a mentally ill older man and his mother, who enabled, facilitated, and covered up his crimes. Out of fear, ORLANDO never told his mother about the abuse. Id.

106. On or around October of 2015, ORLANDO's mother informed him that she needed to move back to Illinois in order to attend to other family issues. Id.

107. ORLANDO was enrolled in private school and asked his mother if he could stay in Virginia to continue his education – so long as he did not have to stay with the NEALS. Id.

108. Donovan and Moore offered to assume guardianship of ORLANDO in or around October of 2015, after ORLANDO told Donovan that he wanted to continue his

education and build his future but he could not stay at the Neals.  Id.

109.  ORLANDO told Donovan that BRISTOL NEAL was obsessed with him, but stopped short of disclosing the abuse, because NEAL had told ORLANDO that if he told anyone about the abuse, that Donovan would no longer sponsor his private education.  Id.

110.  Donovan had no knowledge of Neal's threats. [**See EXHIBIT C: Samuel Orlando Affidavit**]

111.  The abuse ORLANDO received at the hands of the NEAL defendants ended in 2019, when ORLANDO was sixteen (16) years old. [**See EXHIBIT C: Samuel Orlando Affidavit**]

112.  At the time he stopped abusing Plaintiff SAMUEL ORLANDO, Defendant BRISTOL NEAL was nineteen (19) years old. Id.

113.  Plaintiff SAMUEL ORLANDO lives with his guardians at their home, 47 South Windsong Court, Fishersville, Virginia. Id.

114.  Plaintiff SAMUEL ORLANDO has lived with the couple since his mother moved from Virginia and back to Illinois in 2016. Id.

115.  The occasions of the abuse lessened greatly after ORLANDO moved in with Donovan and Moore, and would only occur when he went to the NEAL residence or when BRISTOL NEAL came to his residence. Id.

116.  ORLANDO refused to go to the NEAL house, which angered BRISTOL NEAL. ORLANDO received stalking and harassing text messages from Defendant REBECCA NEAL, such as "Fuckin annoying," "Like ik ur home fuckin answer," "Can u

be mature an answer your god damn phone", and "Ur bein childish asf," the messages Donovan discovered when he decided to terminate the employment of REBECCA NEAL for cause, ie: violating technology policies. Id.

117. Defendant BRISTOL NEAL's alleged statements to Defendant Donald Smith are false. The ages of both the Plaintiff and the Defendant BRISTOL NEAL were misrepresented, and SAMUEL ORLANDO, a juvenile sexual assault victim, was publicly identified when Defendant Sheriff Donald Smith sent the search warrant affidavit to the media.

118. All of the sexual encounters between Plaintiff SAMUEL ORLANDO and Defendant BRISTOL NEAL were accomplished by the use of threat and intimidation by Defendant BRISTOL NEAL.

### The NEAL Defendants extortion of Plaintiff SAMUEL ORLANDO's guardians

119. Plaintiff SAMUEL ORLANDO's guardian Donovan terminated Defendant REBECCA NEAL when Donovan discovered inappropriate text messages sent to his son Plaintiff SAMUEL ORLANDO from her work (Nexus) phone. [*See **EXHIBIT D: Erik Schneider Affidavit***]

120. Defendant REBECCA NEAL claimed the messages were from her son, who was once friends with Plaintiff SAMUEL ORLANDO. Id.

121. Defendant REBECCA NEAL attempted to extort Donovan and Moore, claiming that her son could make accusations against them. Id.

122. When Defendant REBECCA NEAL's company phone was recovered,

Nexus security personnel found text messages between Defendant REBECCA NEAL and her husband discussing purchasing luxury goods (to wit: shearling coats and exotic cars) that they believed they were "about to get" with the money they sought to extort.  Id.

### The Sheriff Defendants ignored Plaintiff SAMUEL ORLANDO's criminal complaints against the NEAL Defendants

123. Donovan and Plaintiff SAMUEL ORLANDO filed a criminal complaint against the NEAL Defendants with the Sheriff's Office. [*See EXHIBIT E: Criminal Complaint filed by Samuel Orlando against NEAL Defendants*]

124. Plaintiff SAMUEL ORLANDO obtained a protective order against the NEAL Defendants from with the Augusta County General District Court based on the allegations in his criminal complaint. [*See EXHIBIT F: Orlando v. Neal, Augusta County General District Court – Protective Order*]

125. However, the Sheriff's Office refused to investigate, citing a conflict of interest. [*See EXHIBIT D: Erik Schneider Affidavit*]

126. Notably, the Sheriff's Office has not cited a conflict when undertaking efforts to investigate or prosecute Plaintiff SAMUEL ORLANDO in order to curb his political speech.

### The conspiracy between Defendant SHERIFF SMITH and the NEAL Defendants to punish Plaintiff SAMUEL ORLANDO

127.  According to an affidavit supporting the Augusta County Sheriff's Office Search Warrant ("the Affidavit"), on November 11th, 2021, just one (1) day after refusing Plaintiff SAMUEL ORLANDO's criminal complaint, SHERIFF SMITH met with

Plaintiff SAMUEL ORLANDO's adult abuser, Defendant BRISTOL NEAL, and the abuser's mother, Defendant REBECCA NEAL. [*__See__ **EXHIBIT G: Major Jenkins Search Warrant Affidavit**]

128. According to the affidavit, the trio – Defendant SHERIFF SMITH and the NEAL Defendants – concocted a fantastical story alleging that Orlando and his parents were the abusers, that ORLANDO was the adult, and that his adult abuser was a child.

129. Defendant MAJOR JENKINS is noted as having not participated in this meeting, but for some reason he, and not Defendant SMITH, served as the Affiant of the eventual Affidavit memorializing the meeting.

130. Defendant SHERIFF SMITH and MAJOR JENKINS even went as far as to invert the ages of Plaintiff SAMUEL ORLANDO and his abuser Defendant BRISTOL NEAL.

131. According to the Affidavit, this initial meeting between the Sheriff Defendants and the NEAL Defendants occurred one (1) day after Defendant SHERIFF SMITH'S office turned Plaintiff SAMUEL ORLANDO – the actual victim – away, one (1) day after Plaintiff SAMUEL ORLANDO – the actual victim – presented evidence of the crimes committed against him.

**Defendant SHERIFF SMITH personally resumes investigating
Plaintiff SAMUEL ORLANDO following
Plaintiff SAMUEL ORLANDO's allegation of
perjury by Defendant SHERIFF SMITH**

132. Instead of investigating the complaint of the victim Plaintiff SAMUEL ORLANDO, the Sheriff Defendants began investigating Plaintiff SAMUEL ORLANDO

based on allegations from the NEAL Defendants.

133. On November 11, 2021, Defendant SHERIFF SMITH told the NEAL Defendants that this case would be investigated by the Virginia State Police.

134. On January 2, 2022, Plaintiff SAMUEL ORLANDO filed a criminal complaint at the Lynchburg, VA magistrate's office against DONALD SMITH, alleging SMITH had released ORLANDO's personal information illegally, as ORLANDO was a juvenile at the time.

135. On February 11, 2022, Defendant SHERIFF SMITH lost his bid to quash his, and other, witness subpoenas in the protest related arrest cases. Judge Shah ruled that the Sheriff and other Defense witnesses were required to appear at trial.

136. On May 27, 2015 and June 10, 2015, Defendant SHERIFF SMITH lied to federal agents investigating the SHERIFF's "close friend" for human trafficking and tampering with federal witnesses.

137. Special Agent Tami Ketcham, with the United States Department of Homeland Security, filed an affidavit in the case on November 23rd, 2015. [**See EXHIBIT H: Tami Ketcham, USDHS, Affidavit**]

138. Upon information and belief, Defendant SHERIFF SMITH was afraid to testify in the protest case because he knew he would likely be asked questions about the affidavit.

139. According to the Affidavit, on September 1, 2022, just **ONE DAY PRIOR** to the protestors' criminal trials, Defendant SHERIFF SMITH reassumed control of the investigation from the State Police.

140. On September 2, 2022, all of the protestors on trial that day were found NOT GUILTY of all nineteen noise-ordinance violation charges. The Honorable Judge Helvin, sitting in the Augusta County General District Court, pronounced his verdict in the protestors trials as "NOT GUILTY by reason of a VIOLATION of the First Amendment". (Commonwealth v. Michael Phillips, et al., Augusta County General District Court)

141. Defendant SHERIFF SMITH was indeed called to testify at the protestors' trial.

142. When asked about whether he had lied to federal agents in a federal investigation, SHERIFF SMITH lied and responded, "NO."

143. On September 16, 2022, Plaintiff SAMUEL ORLANDO and his fellow protestors filed a criminal complaint [*__See__ EXHIBIT I: Criminal Complaint against Donald Smith*) with Commonwealth Attorney Jeff Gaines against SMITH.

144. The complaint alleged that Defendant SHERIFF SMITH committed a felony in the City of Staunton on September 2, 2022, to wit: perjury.

145. On September 20, 2022, the protestors met with Jeff Gaines and his assistant Commonwealth's Attorney Matt Falwell.

146. Gaines indicated that if his office moved forward with perjury charges, he would need to appoint a special prosecutor.

147. Gaines agreed to authorize a Virginia State Police investigation of perjury, which remains ongoing.

**The Application for the Search Warrant
for Plaintiff SAMUEL ORLANDO's residence**

148. On October 3, 2022, a Virginia magistrate issued a search warrant for the home located at 47 South Windsong Court, Fishersville, Virginia, which is Plaintiff SAMUEL ORLANDO's residence. [*See SWN: 015CM2200006356, Augusta County Circuit Court*]

149. The Warrant was supported by an affidavit given by major Brian J Jenkins of the Augusta County Sheriff's Office. Id.

**The only source for potential probable cause
to justify The Warrant was
Defendant MAJOR Jenkins's Affidavit**

150. The Warrant paperwork included an affidavit from DEFENDANT MAJOR JENKINS ("the Affidavit") to support the claim of probable cause to search the Residence.

151. The Warrant specified that Defendant MAJOR JENKINS has been a sworn in Virginia law enforcement officer since 1994, has been employed by Sheriff's Office since 2006. Id.

152. The Warrant further explained that Major Jenkins had extensive experience in criminal investigations, and served in the criminal investigations division of the Sheriff's Office from 2006 to 2018 in varying roles. Id.

153. The Affidavit further claimed that Defendant MAJOR JENKINS had investigated numerous financial crimes and crimes involving the use of computers, phones and electronic devices. Id.

154. Defendant MAJOR JENKINS applied for the warrant on 1:21 PM on October 3rd 2022. Id.

**The probable cause found in The Affidavit is simply
Jenkins' hearsay statements regarding his interviews of
the NEAL Defendants.**

155. The Affidavit supporting the warrant is based on Defendant MAJOR JENKINS' recounting of Defendant Sheriff DONALD SMITH's recounting of details from two (2) interviews SMITH conducted with a 20-year-old man whom the affidavit refers to by the initials "BN." [See affidavit Page 1.]

156. On information and belief, the initials "BN" in the Affidavit refers to Defendant BRISTOL NEAL.

157. The Affidavit states that Defendant Sheriff DONALD SMITH conducted the interview at the request of BN's mother (despite the fact that "BN" was 20-years-old).

158. The Affidavit referred to the woman/mother in the Affidavit only by the initials "RBN." Id.

159. On information and belief, the initials "RBN" in the Affidavit refers to Defendant REBECCA NEAL.

160. In the Affidavit, Defendant MAJOR JENKINS describes Defendant SMITH's description of an alleged sexual relationship between "BN" and Plaintiff SAMUEL ORLANDO.

161. Defendant MAJOR JENKINS claimed that Defendant Sheriff DONALD SMITH claimed that "BN" had told him that he and Plaintiff SAMUEL ORLANDO's

had become friends in Illinois, where both men had lived previously. Id.

162. Defendant MAJOR JENKINS claimed that Defendant Sheriff DONALD SMITH claimed that he advised "BN" and his mother that the description of their interview and their statements would be forwarded to the Virginia State Police. Id.

163. Defendant MAJOR JENKINS claimed that Defendant Sheriff DONALD SMITH claimed that "BN" had told him that "BN" and Plaintiff SAMUEL ORLANDO did "sexual stuff" while on a trip to New York with Plaintiff SAMUEL ORLANDO's family in 2018. Id.

164. During the September 1, 2022 interview, Defendant MAJOR JENKINS claimed that Defendant Sheriff DONALD SMITH claimed that "BN" claimed that his relationship with Plaintiff SAMUEL ORLANDO "ended when "BN" turned 16 and ended when Orlando was about to turn 19." Id.

165. Defendant MAJOR JENKINS claimed that Defendant Sheriff DONALD SMITH claimed that "BN" had informed him that the residence targeted by the Warrant included surveillance equipment both inside and outside of the home. Id. at 4

166. Defendant DONALD SMITH and Defendant Major BRIAN JENKINS lied on a search warrant affidavit, and publicly identified the victim of a child sexual assault they refused to investigate for political reasons. Upon information and belief, the Sheriff knew Plaintiff ORLANDO's age (as the issue was a prior subject of a criminal complaint against the Sheriff) and he conspired with Defendant JENKINS to execute the affidavit so that the Sheriff could avoid *another* allegation of felony perjury.

**The Search Warrant**
**for Plaintiff SAMUEL ORLANDO's residence**

167.   On October 3, 2022, a Virginia magistrate issued a search warrant for the home located at 47 South Windsong Court, Fishersville, Virginia ("the Warrant"), which is Plaintiff SAMUEL ORLANDO's residence. [*See SWN: 015CM2200006356, Augusta County Circuit Court*]

168.   The Warrant was supported by an affidavit given by major Brian J Jenkins of the Augusta County Sheriff's Office. <u>Id.</u>

169.   The Warrant was executed on October 5th, 2022. [*See Exhibit C: Samuel Orlando Affidavit*]

170.   The Warrant stated that the search was related two charges filed pursuant to Virginia Code section 18.2-370.1, taking indecent liberties with child by person in custodial or supervisory relationship. [*See SWN: 015CM2200006356, Augusta County Circuit Court*]

171.   Through the Warrant, the Sheriff's Office sought "any in all electronic devices including desktop computers laptop computers PDAs tablets smartphones storage devices external hard drives, flash memory cards, SD cards or other electronic equipment that may contain electronic data or files of video surveillance, from fixed camera systems, or remote camera systems such as Google Nest, Arlo, Ring or any other web-based security systems." <u>Id.</u>

172.   The Warrant also sought to recover "any sex toys present at their residence." <u>Id.</u>

A.  Defendant MAJOR JENKINS applied for and secured an order from the court sealing the warrant until October 5th 2022. [*EXHIBIT J: Search Warrant obtained by ACSO*]

**The execution of the warrant:**
**Significant destruction of property and**
**the detention of Plaintiff SAMUEL ORLANDO for five hours without cause**

173.  At least twenty (20) Deputies of Defendant SHERIFF SMITH arrived at the Residence to execute the warrant at approximately 8am on October 5th, 2022.

174.  A similar number of deputies simultaneously raided the Nexus corporate campus, including a separate office used by Plaintiff SAMUEL ORLANDO and other BLM protestors to meet, organize, and store protest materials.

175.  The deputies seized hundreds of lapel stickers containing images of Defendant SHERIFF SMITH and his close friend Felix Chujoy, opposing the Sheriff's reelection to office.

176.  The deputies seized documents and evidence, including video evidence of crimes committed by Sheriff Smith related to two minor boys who reported being sexually molested by Defendant SHERIFF SMITH or his deputies, who had spoken with a Staunton News Leader reporter in 2021.

177. Defendant SHERIFF SMITH is alleged to have illegally searched that reporters home before she quit her job, before she could report on allegations of Defendant SHERIFF SMITH's wrongdoing.

178. Additionally, despite the fact that the stated legal basis of the Warrant was to find evidence demonstrating "indecent liberties with a child," as shown in the

Inventory of items taken during the search, Defendant SHERIFF'S OFFICE seized the political materials from Plaintiff SAMUEL ORLANDO's room in the Residence and the space at the Nexus office used by protestors to store materials.

179.  For example, deputies seized Plaintiff SAMUEL ORLANDO's anti-sheriff protest flyers, anti-sheriff lapel stickers, and body cameras the protestors use in protesting.

180.  During the execution of the Warrant, deputies from Defendant SHERIFF SMITH'S office removed Plaintiff SAMUEL ORLANDO from the Residence, secured him with handcuffs, and kept him sitting in the back of a police car in the Residence's cul-de-sac for more than five (5) hours.

181.  In conducting the search, the deputies of Defendant SHERIFF'S OFFICE caused significant damage to the office campus where the protestors keep their protest supplies.

182.  The list of property seized allegedly pursuant to the warrant is extensive.

## CLAIMS

### COUNT I
**(Against the Government Defendants)**
**Violation of civil rights – Unreasonable detention**
**(42 U.S.C. § 1983)**

183.  Plaintiff hereby incorporates by this reference all previous allegations as if asserted herein.

184. In executing the Warrant on October 5, 2022, Sheriff's Office deputies removed Plaintiff SAMUEL ORLANDO from the Residence and made him stand in the

cul-de-sac outside the home.

185. Despite having dozens of deputies to effect the Warrant and search the Residence, with VSP officers providing site security, Sheriff's Office deputies – at the direction of Defendant MAJOR JENKINS and under the authorization of Defendant SHERIFF SMITH – hand-cuffed Plaintiff SAMUEL ORLANDO while he remained standing (or sitting) in the cul-de-sac during the search.

186. The Sheriff's office deputies kept Plaintiff SAMUEL ORLANDO hand-cuffed for more than four (4) hours.

187. The Fourth Amendment guarantees citizens the right to be secure in the person and prevents the Government from detaining citizens without sufficient cause and in an unreasonable manner.

188. Defendant SHERIFF SMITH, in both his official capacity as Sheriff responsible for executing the search warrants, and in his individual capacity to punish Plaintiff SAMUEL ORLANDO, authorized his deputies to detain Plaintiff SAMUEL ORLANDO with handcuffs, despite the absence of any threat to the deputies' safety or to the integrity of the search.

189. This unreasonable detention caused damage to Plaintiff SAMUEL ORLANDO.

**COUNT II:**
**(Against the Government Defendants)**
**Violation of civil rights – Seizure based on insufficient probable cause**
**(42 U.S.C. § 1983)**

190. Plaintiff hereby incorporates by this reference all previous allegations as if

31

asserted herein.

191. "[A] police officer violates the Fourth Amendment if, in order to obtain a warrant, he deliberately or 'with reckless disregard for the truth' makes material false statements or omits material facts." *Miller v. Prince George's Cty.,* 475 F.3d 621, 631 (4th Cir. 2007) (quoting *Franks v. Delaware*, 438 U.S. 154, 155 (1978)).

192. The Fourth Circuit in Miller thus explained that a plaintiff could proceed on a claim that a "seizure was unreasonable because it followed from a warrant affidavit that was deficient because it was dishonest" by showing that the defendant "deliberately or with a reckless disregard for the truth made material false statements in his affidavit . . . or omitted from the affidavit material facts with the intent to make, or with reckless disregard of whether they thereby made, the affidavit misleading." *Miller*, 475 F.3d at 627 (internal quotations and citations omitted).

193. Defendant MAJOR BRIAN JENKINS based his entire affidavit on the assertions of Defendant DONALD L. SMITH. SMITH knew Orlando's age, as he was the subject of a criminal complaint about releasing ORLANDO's juvenile criminal history information (his arrest on a noise violation charge) publicly.

194. Defendant MAJOR BRIAN JENKINS based his entire affidavit on the assertions of Defendant DONALD L. SMITH. SMITH knew or should have known that ORLANDO had complained about being molested and trafficked by the NEAL Defendants, and he ignored that complaint in order to advance a political attack on the Plaintiff, in an effort to discredit him.

32

## COUNT III
### (Against the Government Defendants)
### Violation of civil rights – retaliation for political speech
### (42 U.S.C. § 1983)

195.  Plaintiff hereby incorporates by this reference all previous allegations as if asserted herein.

196.  "Official reprisal for protected speech 'offends the Constitution [because] it threatens to inhibit exercise of the protected right,' and the law is settled that as a general matter the First Amendment prohibits government officials from subjecting an individual to retaliatory actions, including criminal prosecutions, for speaking out . . . ." *Hartman v. Moore*, 547 U.S. 250, 256 (2006) (quoting Crawford-El v. Britton, 523 U.S. 574, 588, n. 10 (1998)).

197.  "To establish a § 1983 claim of retaliation for the exercise free speech, Plaintiffs must prove that: (1) Defendants were acting under color of state law; (2) Plaintiffs' speech activities were protected under the First Amendment; and (3) Plaintiffs' exercise of their protected right was a substantial or motivating factor in Defendants' actions." Harrington v. Harris, 118 F.3d 359, 365 (5th Cir. 1997).

198.  The Sheriffs Defendants were acting under the color of law when they executed the search warrant on the ORLANDO home.

199.  ORLANDO'S speech criticizing an elected Sheriff accused of criminal activity is Constitutionally protected speech. The Augusta County General District Court has already ruled that these specific protests were protected by the First Amendment, and that issuing noise ordinance charges against the protestors was a violation of their First

Amendment rights.

200. The deputies seized large quantities of protest materials, seizures that can only be described as motivated by animus toward the political messaging of the materials.

### COUNT IV:
### (Against the NEAL Defendants)
### Sex trafficking of children or by force, fraud, or coercion
### (18 U.S.C 2255)

201. Plaintiff SAMUEL ORLANDO files this cause of action against the NEAL Defendants for cause, claim, damages, and hereby adopt and incorporate by reference the allegations contained in all of the paragraphs of this Complaint as though set forth fully herein.

202. 18 U.S.C. § 2255 confers a civil cause of action on minor victims arising out of incidents of sexual abuse, possession of child pornography, and/or creating child pornography:

a. In general.--Any person who, while a minor, was a victim of a violation of section 1589, 1590, 1591, 2241(c), 2242, 2243, 2251, 2251A, 2252, 2252A, 2260, 2421, 2422, or 2423 of this title and who suffers personal injury as a result of such violation, regardless of whether the injury occurred while such person was a minor, may sue in any appropriate United States District Court and shall recover the actual damages such person sustains and the cost of the suit, including a reasonable attorney's fee. Any person as described in the preceding sentence shall be deemed to have sustained damages of no less than $150,000 in value.

203. 18 U.S.C §2421 prohibits transportation, across state lines, of children or

for any sexual purpose.

204.   Plaintiff SAMUEL ORLANDO, who was a minor (eleven-years-old) at the time of his being trafficked from Illinois to Virginia, was the "victim" of the NEAL Defendants' violation of 18 U.S.C. §2421.

205.   Defendant REBECCA NEAL violated this statute because NEAL was the parent of BRISTOL NEAL, knew that her son was molesting Plaintiff, and facilitated the transportation of the minor Plaintiff for the purpose of forcing ORLANDO to continue to engage in sex acts with her son. When Defendant REBECCA NEAL became aware of the sexual molestation, threatened Plaintiff to keep the secret acts from his mother, and then transported the eleven-year-old minor Plaintiff across state lines to facilitate additional sex acts and prevent Plaintiff from making disclosures, Defendant acted as an agent for Defendant BRISTOL NEAL, in that she permitted, facilitated, and enabled this conduct to occur.

206.   As a direct and proximate cause of Defendant REBECCA NEAL's actions, Plaintiff Samuel Orlando suffered and continues to suffer severe emotional and mental distress, anguish, humiliation, embarrassment, fright, shock, pain, discomfort, and anxiety.

207.   The conduct of Defendants was malicious, willful, and intentional.

## COUNT V
### (Against the NEAL Defendants)
### Transporting a minor across state lines for sexual purposes
### (18 U.S.C 2255)

208.   Plaintiff SAMUEL ORLANDO files this cause of action against the NEAL

Defendants for cause, claim, damages, and hereby adopt and incorporate by reference the allegations contained in all of the paragraphs of this Complaint as though set forth fully herein.

209.   Title 18 U.S.C. § 2255 confers a civil cause of action on minor victims arising out of incidents of sexual abuse, possession of child pornography, and/or creating child pornography. See 18 USC § 2255(b).

210.   This section prohibits the sex trafficking of children or by force, fraud, or coercion.

211.   Plaintiff SAMUEL ORLANDO, who was a minor (eleven-years-old) at the time of his being trafficked from Illinois to Virginia, was the "victim" of Defendant REBECCA NEAL's violation of 18 U.S.C. §1591.

212.   Defendant REBECCA NEAL violated this statute because NEAL was the parent of BRISTOL NEAL, knew that her son was molesting Plaintiff, and facilitated the transportation of the minor Plaintiff for the purpose of forcing ORLANDO to continue to engage in sex acts with her son.

213.   When Defendant REBECCA NEAL became aware of the sexual molestation, threatened Plaintiff to keep the secret acts from his mother, and then transported the eleven-year-old minor Plaintiff across state lines to facilitate additional sex acts and prevent Plaintiff from making disclosures, Defendant acted as an agent for Defendant BRISTOL NEAL, in that she permitted, facilitated, and enabled this conduct to occur.

214.   As a direct and proximate cause of Defendant REBECCA NEAL's actions,

Plaintiff Samuel Orlando suffered and continues to suffer severe emotional and mental distress, anguish, humiliation, embarrassment, fright, shock, pain, discomfort, and anxiety.

215.    The conduct of Defendants was malicious, willful, and intentional.

**COUNT VI:**
**(Against the NEAL Defendants)**
**Use of wire to persuade, induce, entice, or coerce a minor**
**to engage in prostitution or any other illegal sexual activity.**
**(18 U.S.C. 2422(b) via 18 U.S.C. 2255)**

216.    Plaintiff SAMUEL ORLANDO files this cause of action against the NEAL Defendants for cause, claim, damages, and hereby adopt and incorporate by reference the allegations contained in all of the paragraphs of this Complaint as though set forth fully herein.

217.    18 U.S.C. § 2255 confers a civil cause of action on minor victims arising out of incidents of sexual abuse, possession of child pornography, and/or creating child pornography.

218.    18 U.S.C §2422(b) prohibits use of the U.S. Mail or certain technology, such as the Internet or the telephone (whether mobile or a land line), to persuade, induce, entice, or coerce a minor to engage in prostitution or any other illegal sexual activity.

219.    Plaintiff SAMUEL ORLANDO, who was a minor (eleven-years-old) at the time of his being trafficked from Illinois to Virginia, was the "victim" of the NEAL Defendants' violation of 18 U.S.C. §2422(b).

220.    Defendant REBECCA NEAL violated this statute because NEAL was the parent of BRISTOL NEAL, knew that her son was molesting Plaintiff, and facilitated the

transportation of the minor Plaintiff for the purpose of forcing ORLANDO to continue to engage in sex acts with her son.

221. When Defendant REBECCA NEAL became aware of the sexual molestation, threatened Plaintiff to keep the secret acts from his mother, and then transported the eleven-year-old minor Plaintiff across state lines to facilitate additional sex acts and prevent Plaintiff from making disclosures, Defendant acted as an agent for Defendant BRISTOL NEAL, in that she permitted, facilitated, and enabled this conduct to occur. She utilized her cellphone, and specifically text messaging, to entice and later threaten Plaintiff ORLANDO.

222. As a direct and proximate cause of Defendant REBECCA NEAL's actions, Plaintiff SAMUEL ORLANDO suffered and continues to suffer severe emotional and mental distress, anguish, humiliation, embarrassment, fright, shock, pain, discomfort, and anxiety.

223. The conduct of Defendants was malicious, willful, and intentional.

## COUNT VII
### (Against the Government Defendants)
### Disclosure of juvenile criminal investigative files
### (Virginia code § 9.1-135)

224. Plaintiff hereby incorporates by this reference all previous allegations as if asserted herein.

225. Virginia Code section 9.1-135 states: "Any person may institute a civil action in the circuit court of the jurisdiction in which the [state agency] has its administrative headquarters, or in the jurisdiction in which any violation is alleged to

have occurred … ." VA. CODE § 9.1-135(A)(1).

226.  Without limiting the generality of the term, "damages" shall include loss of profits. See id

227.  The Augusta County Circuit Court is a criminal justice agency as defined by the Code.

228.  The Government Defendants filed the Jenkins Affidavit, which contains juvenile delinquency investigative and hearing information as governed by Virginia Code Title 9.1, Chapter 1, Article 3.

229.  The SHERIFF Defendants knew or should have known that the juvenile records were protected and were not permitted to be disclosed.

230.  Plaintiff SAMUEL ORLANDO has been damaged by The Sheriff Defendants' release of his juvenile records.

231.  Conduct violating section 9.1-135 constitutes a Class 2 misdemeanor. See VA. CODE §9.1-136.

## COUNT VIII
### (Against the Government Defendants and the NEAL Defendants)
### Conspiracy to deprive citizen of Fourth Amendment protections
### (42 U.S.C. § 1983)

232.   Plaintiff hereby incorporates by this reference all previous allegations as if asserted herein.

233.  Defendant SHERIFF SMITH wanted to punish Plaintiff SAMUEL ORLANDO for his political activism against the ACSO as well as what he perceived as personal attacks against him by Plaintiff, including accusing Defendant SHERIFF

SMITH of having a relationship with a man who was convicted in a human trafficking case and who was arrested for soliciting sex from a child and filing a complaint against Defendant SHERIFF SMITH for perjury.

234.   The NEAL Defendants wanted to punish Plaintiff SAMUEL ORLANDO for freeing himself from the abuse of Defendant BRISTOL NEAL, and his parents due to the termination of Defendant REBECCA NEAL from her job at Nexus. REBECCA NEAL also wanted to destroy ORLANDO'S (and his parents') reputations to prevent him from exposing the secrets they knew about them (i.e., the charges recounted herein).

235.   Beginning on November 12, 2021 – mere days after Defendant REBECCA NEAL was terminated from Nexus by Plaintiff's former guardian Donovan after he discovered the text messages on her Nexus phone – Defendant SHERIFF SMITH and the NEAL Defendants agreed that SMITH would investigate Plaintiff SAMUEL ORLANDO for his prior sexual actions with Defendant BRISTOL NEAL, knowing that BRISTOL NEAL was the adult offender and that ORLANDO was a victim of horrific abuse.

236.   Defendant SHERIFF SMITH conducted an interview of the NEAL Defendants that could provide the basis for a search warrant of Plaintiff SAMUEL ORLANDO and his parents' residence.

237.   Defendant SHERIFF SMITH later reacquired control of the investigation after transferring investigative authority from the ACSO to the Virginia State Police during the time that Defendant SHERIFF SMITH was serving as a witness in the noise-ordinance prosecution of the protestors.

238.   Defendant SHERIFF SMITH reacquired control of the investigation after

transferring investigative authority from the ACSO to the Virginia State Police **one day prior** to Defendant SHERIFF SMITH committing perjury when he testified in the protestors arrest cases. (*Commonwealth v. Michael Phillips, et. al., Augusta County General District Court*)

239.    Defendant SHERIFF SMITH and the NEAL Defendants then conducted a second interview providing additional detail for the basis for a search warrant of Plaintiff SAMUEL ORLANDO's Residence as well as the Nexus offices.

240.    Defendant SHERIFF SMITH and the NEAL Defendants' actions in creating the Affidavit written by Defendant MAJOR JENKINS caused the ACSO to conduct a search of the Residence and the Nexus offices, which led to the seizure of Plaintiff SAMUEL ORLANDO's personal property without probable cause (i.e, based on false pretenses).

241.    Defendant MAJOR JENKINS went along with this plan and served as the affiant for the Affidavit despite knowing the history the ACSO and Defendant SHERIFF SMITH personally had with Plaintiff SAMUEL ORLANDO.

242.    The result of this conspiracy has been to damage the Plaintiff in his business, reputation, and trade as a political activist. Defendant Sheriff DONALD L. SMITH used allegations he knows to be false to support an unconstitutional raid to silence a juvenile sexual assault victim, and then forwarded the false affidavit to local and national media.

**COUNT IX**
**(Against the NEAL Defendants)**
**Sexual Battery**

41

**(Virginia Common Law Tort Claim)**

243.    Plaintiff hereby incorporates by this reference all previous allegations as if asserted herein.

244.    On multiple occasions over approximately a six (6) year period, Defendant BRISTOL NEAL touched Plaintiff SAMUEL ORLANDO in a sexual manner without Plaintiff SAMUEL ORLANDO's consent.

245.    The sexual conduct described in the preceding paragraph began when Plaintiff SAMUEL ORLANDO was eleven (11) years old and ended when Plaintiff SAMUEL ORLANDO was sixteen (16) years old (correspondingly, began when Defendant BRISTOL NEAL was fourteen (14) years old and ended when Defendant BRISTOL NEAL was nineteen (19) years old).

246.    This unwanted sexual contact by Defendant BRISTOL NEAL caused Plaintiff SAMUEL ORLANDO significant harm – physically, mentally, and emotionally.

247.    During that time, Defendant REBECCA NEAL was aware of this conduct and acted jointly with her son Defendant BRISTOL NEAL to ensure that Defendant BRISTOL NEAL's abuse was facilitated and continued by ensuring that Plaintiff SAMUEL ORLANDO made himself available for opportunities in which Defendant BRISTOL NEAL could continue to molest Plaintiff SAMUEL ORLANDO.

**COUNT X**
**(Against Defendant SMITH and the NEAL Defendants)**
**INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS**
**(Virginia Common Law Tort Claim)**

248.    Plaintiff hereby incorporates by this reference all previous allegations as if

asserted herein.

249.   Defendant SHERIFF SMITH, Defendant BRISTOL NEAL, and Defendant REBECCA NEAL knew that the allegations that Plaintiff SAMUEL ORLANDO had been the aggressor in the sexual abuse that Plaintiff SAMUEL ORLANDO suffered at the hands of Defendant BRISTOL NEAL were false.

250.   Despite this knowledge, Defendant SHERIFF SMITH, Defendant BRISTOL NEAL, and Defendant REBECCA NEAL intended to create a false affidavit to support a criminal investigation of Plaintiff SAMUEL ORLANDO, which began with the creation of the Affidavit that led to the Warrant.

251.   Defendant SHERIFF SMITH further acted to cause Plaintiff SAMUEL ORLANDO great public embarrassment and harassment by issuing a press release describing these false charges and releasing Plaintiff SAMUEL ORLANDO's juvenile record.

252.   These actions by Defendant SHERIFF SMITH, Defendant BRISTOL NEAL, and Defendant REBECCA NEAL caused Plaintiff SAMUEL ORLANDO to suffer and continue to suffer severe emotional and mental distress, anguish, humiliation, embarrassment, fright, shock, pain, discomfort, and anxiety.

### COUNT XI
**(Against Defendants SMITH, JENKINS, and REBECCA NEAL)**
**NEGLIGENT INFLICTION OF EMOTIONAL DISTRESS**
**(Virginia Common Law Tort Claim)**

253.   Plaintiff hereby incorporates by this reference all previous allegations as if asserted herein.

254.    Defendant SHERIFF SMITH, Defendant MAJOR JENKINS, and Defendant REBECCA NEAL should have known that the allegations that Plaintiff SAMUEL ORLANDO had been the aggressor – in the sexual abuse that Plaintiff SAMUEL ORLANDO suffered at the hands of Defendant BRISTOL NEAL – were false.

255.    Defendant REBECCA NEAL knew the allegations were false because she facilitated and covered up the molestation of Plaintiff ORLANDO by her son, Defendant BRISTOL NEAL.

256.    Defendant SHERIFF SMITH knew the allegations were false because SMITH had previously identified Plaintiff ORLANDO and had previously released his juvenile history information in 2021, which was the subject of a criminal complaint. Defendant SMITH would or should have known that the ages in the affidavit were inverted, and that his office was disclosing the identity of a juvenile sexual assault victim.

257.    Defendant MAJOR JENKINS knew or should have known that the allegations were false because confirming suspects' identities, including date of birth information, is standard law enforcement regulation. Certainly a law enforcement officer with as much experience as Defendant MAJOR JENKINS claims he has in his affidavit, would have ran the identification information of someone he names and misidentifies as the older aggressor.

258.    Nonetheless Defendant SHERIFF SMITH, Defendant MAJOR JENKINS, and Defendant REBECCA NEAL did not sufficiently investigate the allegations that Plaintiff SAMUEL ORLANDO had been the aggressor in the sexual abuse and that Defendant BRISTOL NEAL – as opposed to Plaintiff SAMUEL ORLANDO – was in

fact the victim.

259.     These actions by Defendant SHERIFF SMITH, Defendant MAJOR JENKINS, and Defendant REBECCA NEAL caused Plaintiff SAMUEL ORLANDO to suffer and continue to suffer severe emotional and mental distress, anguish, humiliation, embarrassment, fright, shock, pain, discomfort, and anxiety resulting from the physical injury resulting from the public disclosure of Plaintiff SAMUEL ORLANDO's personal information in the search warrant affidavit.

260.   The severe emotional and mental distress, anguish, humiliation, embarrassment, fright, shock, pain, discomfort, and anxiety are the natural results of the physical injuries Plaintiff SAMUEL ORLANDO suffered due to Defendant SHERIFF SMITH, Defendant MAJOR JENKINS, and Defendant REBECCA NEAL's failure to use due diligence and investigate Defendant BRISTOL NEAL's claims.

261.    ORLANDO'S physical injuries include pain from being handcuffed behind his back for several hours and the loss of his activist materials that were taken by Defendant SMITH'S deputies, many of which were not listed on the search warrant inventory list.

**COUNT XII**
**(Against Defendant SMITH and the NEAL Defendants)**
**PUNITIVE DAMAGES**
**(42 U.S.C. § 1983 and Virginia Common Law)**

262.     Plaintiff hereby incorporates by this reference all previous allegations as if asserted herein.

263.    Defendant BRISTOL NEAL's sexual abuse of Plaintiff SAMUEL

ORLANDO while Plaintiff SAMUEL ORLANDO was a minor was egregious, willful, and wanton and requires the imposition of punitive damages.

264.   Defendant REBECCA NEAL's trafficking of Plaintiff SAMUEL ORLANDO in order for her son Defendant BRISTOL NEAL to continue to sexually abuse Plaintiff SAMUEL ORLANDO, and her later efforts to extort Plaintiff SAMUEL ORLANDO's silence to allow the sexual abuse to continue was egregious, willful, and wanton and require the imposition of punitive damages.

265.   Defendant SHERIFF SMITH's pursuit of unfounded criminal charges and a potential criminal investigation of Plaintiff SAMUEL ORLANDO in retribution for Plaintiff SAMUEL ORLANDO's protected exercise of his First Amendment rights was egregious, willful, and wanton and requires the imposition of punitive damages.

**COUNT XIII**
**(Against Defendant SHERIFF SMITH)**
**Defamation Per Se**
**(Virginia Common Law)**

266.   Plaintiff realleges all the foregoing allegations and incorporates them herein by reference.

267.   Following the execution of the Warrant, Defendant SHERIFF SMITH published the Affidavit supporting the Warrant with local news organizations in Virginia.

268.   The details and contentions in the Affidavit that Plaintiff SAMUEL ORLANDO sexually abused Defendant BRISTOL NEAL are factually untrue, given that Defendant BRISTOL NEAL – three (3) to four (4) years Plaintiff SAMUEL ORLANDO's senior – sexually abused Plaintiff SAMUEL ORLANDO over a period of

six (6) years when Plaintiff SAMUEL ORLANDO was a minor.

269.   Accusing a person of sexual assault is clearly defamatory on its face.

270.   Alternatively, accusing a person of sexual assault is defamatory by implication.

271.   Accusations of sexual abuse in an affidavit filed in court and used as the basis for a search warrant that a magistrate signed are not a mere expression of opinion as reasonably understood by the average person because it can be, and is, provably false.

272.   Accusations of sexual abuse in an affidavit filed in court and used as the basis for a search warrant that a magistrate signed are not rhetorical hyperbole as would be reasonably understood by the average person.

273.   A reasonable person would understand the Affidavit to convey a (false) representation of fact.

274.   Defendant SHERIFF SMITH published the Affidavit in a manner that created a substantial danger to Plaintiffs' reputation and personal safety.

275.   Defendant SHERIFF SMITH published the Affidavit with actual malice, personal spite, and  ill-will, independent of the occasion on which the communication was made, and with the specific intent to harm Plaintiff SAMUEL ORLANDO and his reputation.

276.   Defendant SHERIFF SMITH knew the Affidavit was false at the time he published it, or he had a high degree of awareness of the Affidavit's probable falsity at the time he published it.

277.   Alternatively, Defendant SHERIFF SMITH published the Affidavit with a

reckless disregard for its truth.

278.   Plaintiff SAMUEL ORLANDO is not a public figure.

279.   Defendant SHERIFF SMITH acted with actual malice in publishing this false information.

280.   Defendant SHERIFF SMITH's publication of the Statement was unreasonable.

281.   Alternatively, Defendant SHERIFF SMITH acted negligently in failing to ascertain accurate facts upon which the Statement could be based.

282.   Alternatively, Defendant SHERIFF SMITH did not take reasonable care in ensuring the truth of the Statement before publishing it.

283.   Defendant's SHERIFF SMITH actions constitute defamation per se, as the defamatory statements in the Affidavit allege criminal activity.

284.   Plaintiff SAMUEL ORLANDO and his family have suffered significant hardships because of Defendant SHERIFF SMITH's actions.

**COUNT XIV**
**(Against the SHERIFF Defendants)**
**Civil Conspiracy**
**(Virginia code 18.2-500)**

285.   Plaintiff incorporates by reference all of the preceding allegations.

286.   By encouraging the NEAL Defendants to provide the basis for the Affidavit, especially in light of the prior allegations of sexual abuse at the hands of Defendant BRISTOL NEAL made by Plaintiff SAMUEL ORLANDO, the SHERIFF Defendants combined, associated, agreed, or mutually undertook and concerted together

for the purpose of willfully and maliciously injuring Plaintiff SAMUEL ORLANDO in his reputation, trade, business or profession as an activist and entrepreneur for his political protests and expression of criticism against Defendant SHERIFF SMITH and the ACSO.

287.   The SHERIFF Defendants lied about the age of Plaintiff SAMUEL ORLANDO, a juvenile sex assault victim, and publicly identified that juvenile victim as an alleged child molester.

288.   The SHERIFF Defendants conspired together to mutually benefit the parties, in that the SHERIFF Defendants could distract from their wrongdoing that Plaintiff SAMUEL ORLANDO's protests brought to public attention, and the NEAL Defendants could avoid prosecution for crimes committed against Plaintiff SAMUEL ORLANDO.

289.   Plaintiff SAMUEL ORLANDO'S reputation in his business or trade as a devoted political and police accountability activist was damaged by the SHERIFF Defendants' actions, as described previously herein.

290.   Plaintiff SAMUEL ORLANDO is entitled to recover three-fold damages, costs and attorney's fees pursuant to Virginia Code §18.2-499 and 500.

## **PRAYER**

WHEREFORE, Plaintiff Samuel Orlando, through undersigned counsel, prays that this Court enter a judgment declaring that he be awarded:

A.   actual and punitive damages, in an amount to be proved at trial.

B.    costs, including reasonable attorneys' fees under 42 U.S.C § 1988(b) (as well as any other applicable provision);

C.    treble damages, costs and attorney's fees pursuant to Virginia Code §18.2-499 and 500 (as well as any other applicable provision); and

D.    such other and further relief as the Court deems just and proper.

DATED THIS 24th DAY OF OCTOBER, 2022

**JURY TRIAL DEMANDED**

*Respectfully Submitted,*

/s/ Christopher M. Okay
CHRISTOPHER M. OKAY  VSB#35611

Chris Okay, Attorney at Law
117 S. Lewis Street, Suite 218
Staunton, Virginia 24401
(540) 466-3130
chrisokay@icloud.com

AMINA MATHENY-WILLARD
Attorney & Counselor at Law

AMINA MATHENY-WILLARD, PLLC
Dominion Tower / Bank of America Bldg.
999 Waterside Drive, Suite 2525,
Norfolk, VA 23510

Cell/Text: 757-652-6462 (757-65AMINA)

Tel.: 757-777-3441
Fax: 757-282-7808
Email: amina@aminalaw.com

**Orlando v. Smith et al.**
**Exhibit List**

A. EXHIBIT A: CL22000002-00 Lynchburg Circuit Court / Orlando v. Michael, copy

of complaint.

B. EXHIBIT B: General District Court Record of Orlando Juvenile Arrest

C. EXHIBIT C: Samuel Orlando Affidavit

D. EXHIBIT D: Erik Schneider Affidavit

E. EXHIBIT E: Criminal Complaint filed by Samuel Orlando against NEAL

Defendants

F. EXHIBIT F: Orlando v. Neal, Augusta County General District Court – Protective

Order

G. EXHIBIT G: Major Jenkins Search Warrant Affidavit

H. EXHIBIT H: Tami Ketcham, USDHS, Affidavit

I. EXHIBIT I: Criminal Complaint against Donald Smith, filed with Jeff Gaines

J. EXHIBIT J: Search Warrant obtained by ACSO