IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
HARRISONBURG DIVISION

| | |
|---|---|
| SAMUEL JOSEPH ORLANDO,<br>a resident of Virginia,<br><br>    Plaintiff,<br><br>v.<br><br>SHERIFF DONALD L. SMITH, in his<br>individual capacity,<br>MAJOR BRIAN JENKINS, in his<br>individual capacity,<br>BRISTOL NEAL,<br>a resident of Virginia,<br>    and;<br>REBECCA BYRD NEAL,<br>a resident of Virginia,<br><br>    Defendants. | Case No.<br><br><br><br>JURY TRIAL DEMANDED |

### SWORN AFFIDAVIT OF SAMUEL JOSEPH ORLANDO

I, SAMUEL JOSEPH ORLANDO, hereby declare under penalty of perjury as follows:

1. I am over the age of 18 and am otherwise competent to testify as to the matters set forth herein.

2. I am a resident of Augusta County, where I live with my parents, Mike Donovan and Richard Moore. Mike and Richard were my guardians and I consider them my parents.

3. I met Defendant BRISTOL NEAL in Illinois in late 2014 or early 2015. He was older and I always thought it was cool to hang out with older people. We became friends.

4. I enjoyed spending time with BRISTOL NEAL, in part because NEAL's parents would permit kids at their house to do just about anything.

5. A few months after meeting, in early 2015, Defendant BRISTOL NEAL first molested me. The molestation began as touching and oral sex. I was eleven years old.

6. In early 2015, I was molested by Defendant BRISTOL NEAL in the home of his parents in Plano, IL. Defendant REBECCA NEAL walked in during the molestation. NEAL immediately left the room, leaving me in the room with BRISTOL NEAL. After that I decided that I did not want to spend time at their house anymore.

7. The next morning, Defendant REBECCA NEAL told me that I could not tell anyone about what defendant BRISTOL NEAL had done to me. Defendant REBECCA NEAL told me that on one hand the forced sex acts were normal, but on the other hand that I mustn't tell anyone about the behavior or it could hurt her son.

8. When I declined to return to the NEAL home, Defendant BRISTOL NEAL told me that his mother wanted to speak with me. Defendant REBECCA NEAL told me that her son was sick and that if I didn't spend time with him that he might hurt himself, and that would be my fault. In the Spring of 2015 Defendant BRISTOL NEAL asked me to accompany him and his family on a trip to Virginia, where the Neal family was moving.

9. I was eleven (11) years old at the time, and I told Defendant BRISTOL NEAL, who I believe was fourteen (14) years old, that I was already freaked out by the things

Defendant BRISTOL NEAL was making me do.

10. I was approached by Defendant REBECCA NEAL, who told me that she was worried that Defendant BRISTOL NEAL might hurt himself if I did not accompany them to Virginia.

11. I complained that I was uncomfortable with Defendant BRISTOL NEAL's obsession with me and the things she had witnessed her son doing to me.

12. Defendant REBECCA NEAL responded to me that this is "normal behavior" for young boys.

13. Defendant REBECCA NEAL told me that the behavior would stop and that I could be comfortable attending the trip to Virginia.

14. Contrary to Defendant REBECCA NEAL's assertions to me, the abuse continued and increased in frequency after the NEAL defendants brought me across state lines from Illinois to Virginia.

15. Defendant BRISTOL NEAL began molesting me, beginning when I was eleven (11) years old and ending when I was sixteen (16) years old (correspondingly, beginning when Defendant BRISTOL NEAL was fourteen (14) years old and ending when Defendant BRISTOL NEAL was nineteen (19) years old).

16. I have a recording of a portion of one of the last times he molested me.

17. The audio recording demonstrates Defendant BRISTOL NEAL trying to force me to do very disgusting and dangerous sex acts involving human waste.

18. During the entirety of the molestation, when I said, "NO," Defendant BRISTOL NEAL would threaten to tell my mom, or my girlfriend that I had engaged in

homosexual sex.

19. The only way I could maintain privacy over my sexual orientation or the fact that he had ever done anything to me was to permit Defendant ~~him~~ SJO to perform vile acts on me, including analingus and sexual acts involving feces.

20. As Defendant BRISTOL NEAL's demands grew darker and more dangerous, I refused to spend time with him.

21. Defendant REBECCA NEAL, mother of Defendant BRISTOL NEAL, was aware of the sexual abuse, having walked in on one such act when I was eleven (11) years old in Illinois.

22. Defendant REBECCA NEAL told me that I could never tell my mom about what had happened, and that it was a secret between me and her son.

23. At several times during the abuse, both in Illinois and in Virginia, BRISTOL NEAL would threaten me that my participation in homosexual sex activities would be divulged to my mom and my girlfriend, if I refused to engage in more and varying types of sexual acts.

24. When I refused to spend time with Defendant BRISTOL NEAL, I would receive abusive text messages from Defendant BRISTOL NEAL, abusive social media messages from Defendant BRISTOL NEAL, and abusive text messages from Defendant REBECCA NEAL.

25. As the molestation grew in frequency and severity, Defendant REBECCA NEAL told me that if I did not "spend time with Bristol" and "make Bristol happy," then Defendant BRISTOL NEAL might kill himself, and his death would be my fault.

26. In the Summer of 2015 I told Defendant BRISTOL NEAL that I could no longer participate in sexual acts and that I wanted to go home to my mom in Illinois.

27. I was then approached by Defendant REBECCA NEAL, who told me that she couldn't afford to send me home and that if I called my mom to come get me, I would get in a lot of trouble.

28. REBECCA NEAL refused to tell me what she meant by "a lot of trouble", and I interpreted her statement to mean that her son would make good on his threats.

29. My relationship with my mom is critically important to me. I perceived that my mother, who holds conservative Christian values, would react negatively to being told her son engaged in homosexual activity. I was wrong, my mom loves me very much, and I wish I had told her what happened to me in Illinois.

30. Since REBECCA NEAL told me the abuse was normal, I felt hopelessly trapped as I was being subjected to vile and disgusting child sexual abuse each and every night at the residence of the NEAL Defendants.

31. On November 8, 2019, I was molested by Defendant BRISTOL NEAL and I recorded, via audio recorder, a portion of that crime.

32. After the November 8, 2019 incident, I told Defendant BRISTOL NEAL that I would no longer do the things he wanted me to do, and that if he continued to threaten me that I would tell Donovan and Moore what he and his mother had done to me.

33. Defendant BRISTOL NEAL told me that if I did tell anyone what happened he would destroy my life and cause me to lose everything I had.

34. Defendant Bristol NEAL told me that if I would not "be with him," he would

5

"take everything that I own".

35. BRISTOL NEAL had a terrible history of getting me, and other younger kids, into trouble. One time he asked me to go with him to destroy a van with golf clubs. In the Summer of 2015, after that occurred, Defendant BRISTOL NEAL and I met with Mike Donovan at Nexus because Defendant REBECCA NEAL wanted to see if he could help us.

36. Earlier in our relationship, when I first came to Virginia and following the resolution of a police investigation into a damaged van, I asked Donovan if my mom could ever work for Nexus. I could no longer live with the NEALS and endure daily sexual abuse.

37. On August 4th, 2015, my mother moved to Virginia and began working with Serve by Nexus in Harrisonburg. I was able to move out of the NEAL residence and into a townhome with my mom.

38. While moving in with my mom lessened the frequency of the sexual abuse, I was still subject to molestation two to three times per week, and the sexual activities became more and more perverse.

39. The sexual acts, which started with acts involving choking and the infliction of pain, transcended to biologically unsafe sexual acts involving fecal matter.

40. REBECCA NEAL told me as I left her residence to make sure that I "remembered what would happen" if I told mine "and Bristol's secrets". At this time I was only twelve (12) years old and BRISTOL NEAL I believe was turning sixteen (16).

41. I was a child victim of sexual abuse at the hands of a mentally ill older man and his mother, who enabled, facilitated, and covered up his crimes. Out of fear, I never

6

told my mom about the abuse.

42. On or around October of 2015, my mom told me that she needed to move back to Illinois in order to attend to other family issues.

43. I was enrolled in private school and asked my mom if I could stay in Virginia to continue my education – so long as I did not have to stay with the NEALS.

44. Donovan and Moore offered to assume guardianship of me on or about October 2015 after I told Donovan that I wanted to continue my education and build my future but I could not stay at the Neals.

45. I told Donovan that BRISTOL NEAL was obsessed with me, but stopped short of disclosing the abuse, because NEAL had told me that if I told anyone about the abuse, that Donovan would no longer sponsor my private education.

46. The abuse I received at the hands of the NEAL defendants ended in 2019, when I was sixteen (16) years old.

47. At that time he stopped abusing me, Defendant BRISTOL NEAL was nineteen (19) or twenty (20) years old.

48. I live with my guardians at their home, 47 South Windsong Court, Fishersville, Virginia.

49. I have lived with the couple since my mother moved from Virginia and back to Illinois in 2016.

50. The occasions of the abuse lessened greatly after I moved in with Donovan and Moore, and would only occur when I went to the NEAL residence or when BRISTOL NEAL came to my residence.

7

51. I refused to go to the NEAL house, which angered BRISTOL NEAL. I received stalking and harassing text messages from Defendant REBECCA NEAL, such as "Fuckin annoying," "Like ik ur home fuckin answer," "Can u be mature an answer your god damn phone", and "Ur bein childish asf," the messages Donovan discovered when he decided to terminate the employment of REBECCA NEAL for cause, ie: violating technology policies

I have attempted to recollect dates related to my abuse, to the best of my ability. I was a child during the times involved, so they are listed to the best of my recollection.



Samuel Joseph Orlando

STATE OF VIRGINIA))

CITY OF STAUNTON))

The forgoing Sworn Affidavit of SAMUEL ORLANDO was acknowledged before me this 21st day of Oct_____, 2022, by



NOTARY PUBLIC



My Commission Expires: 7/31/25

Registration Number: 7743501

8