# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF VIRGINIA
# HARRISONBURG DIVISION

| | |
|---|---|
| SAMUEL JOSEPH ORLANDO, a resident of Virginia,      Plaintiff, <br><br> v. <br><br> SHERIFF DONALD L. SMITH, in his individual capacity, <br> MAJOR BRIAN JENKINS, in his individual capacity, <br> BRISTOL NEAL, a resident of Virginia,      and; <br> REBECCA BYRD NEAL, a resident of Virginia, <br><br>      Defendants. | Case No. <br><br><br> JURY TRIAL DEMANDED |

## SWORN AFFIDAVIT OF ERIK G SCHNEIDER

I, ERIK G. SCHNEIDER, hereby declare under penalty of perjury as follows:

1. I am over the age of 18 and am otherwise competent to testify as to the matters set forth herein.

2. I am a resident of Augusta County, and in 2021 I worked as Senior Investigator for Nexus Services. My responsibilities in that position include employee theft and loss prevention investigations.

3. My duties included investigating allegations of misuse of technology equipment, and other similar violations of the Nexus Standard Operating Procedure.

4. Plaintiff SAMUEL ORLANDO is the son of Micheal Donovan and Richard Moore, a married couple.

5. In November of 2021 I was contacted by Mr. Donovan and informed that Plaintiff ORLANDO had been repeatedly sexually molested by Defendant BRISTOL NEAL.  Donovan learned this from text messages he viewed on ORLANDO'S Cell phone which were sent from REBECCA NEAL'S work cell phone.  After viewing the text's, Donovan spoke to ORLANDO and learned of the assaults.

6. I was tasked, by special committee, with interviewing REBECCA NEAL to ascertain if there was probable cause for termination and criminal charges for Extortion of DONOVAN and other crimes against ORLANDO.  In preparation for that interview, I interviewed DONOVAN and NEXUS HR DIRECTOR, LISA BREEDEN.

7. During the per-interviews I learned that REBECCA NEAL had substantial garnishments from her pay for tax issues and that she had asked for large sums of money from Donovan which he was unable or unwilling to provide to her.

8. Immediately upon contact with REBECCA NEAL, I collected her employee cell phone, per policy, I then interviewed her at length.

9. On her phone I discovered text messages between her and ORLANDO.  The inappropriate text messages in question were abusive and contained Profanity and were violative of the Nexus technology policies and moral norms.

NEAL blamed her son, BRISTOL NEAL, for the messages and admitted letting him use her phone to contact Plaintiff ORLANDO.  This was a second violation of Nexus' company policy. Neal had already received a final warning for failure to protect company technology.

10. Also on the phone were messages between NEAL and her husband, BENNY NEAL, describing luxury purchases they wanted to make.  These messages coincided with NEAL'S demand for money from DONOVAN.

11. I discovered she not only had great anger towards Donovan, but she had also put forethought into how she could harm him if she'd wanted to.  One notable statement from the interview she stated, ***"if she wanted to harm Donovan, she would have acted differently and that she simply could have accused him of being a child molester***" she went on to say that "***it didn't even need to be true."***

12. In one of the more stunning admissions, Neal states that that if she wanted to harm Donovan, she would have contacted David Briggman with her allegations.  Neal stated if she did that, the allegations would be spread everywhere quickly.

13. REBECCA NEAL clearly demonstrates in the interview that she has thought through the ramifications of these actions and is capable of malice of forethought in this situation.

14. The recorded interview and written report, in its entirety, was provided to Nexus' General Counsel.

15. The special committee of Nexus voted to terminate REBECCA NEAL'S employment immediately upon hearing the results of the interviews and the entire NEAL family

were served Trespass notice from the corporate address and DONOVAN/ORLANDO'S residence.

16. Numerous incidents of BRISTOL NEAL'S anger occurred after the trespass notice in which security at the residence needed to intervene because BRISTOL NEAL physically came to the location just outside the trespass area and would scream obscenities at ORLANDO from the street.

17. Samuel Orlando told me about BRISTOL NEAL molesting him shortly after he reported it to DONOVAN. I advised that DONOVAN and ORLANDO should file a criminal complaint.

18. I am aware that the Augusta County Sheriff's Office and the 25th judicial district magistrates have cited conflicts of interest in dealing with DONOVAN, ORLANDO, and their family, presumably because of the family's support of Black Lives Matter protests at the Augusta County Sheriff's Office.

19. ORLANDO filed a criminal complaint at the Augusta County General District Court and received a protective order. According to ORLANDO and DONOVAN, no law enforcement from Augusta County or the Virginia State Police ever followed up on ORLANDO's complaint.

_____
Erik Schneider

4

STATE OF WASHINGTON
COUNTY OF PIERCE

The forgoing Sworn Affidavit of ERIK G. SCHNEIDER was acknowledged before me this __21__ day of __October__, 2022, by Erik Schneider.

_____
NOTARY PUBLIC

OLGA BUTROVICH
Notary Public
State of Washington
Commission # 20109124
My Comm. Expires Jul 23, 2024

My Commission Expires: 07-23-2024
Registration Number:   20109124

This notarial act was completed as an online notarization via two-way webcam and audiovisual technology.
The signer(s) produced VA driver license as identification and were approved with multi-factor KBA authentication.

5