IN THE
UNITED STATES DISTRICT COURT
FOR THE
WESTERN DISTRICT OF VIRGINIA
HARRISONBURG DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA ) | |
| ) | |
| v. ) | |
| ) | Court No. 5:14-cr-00055 |
| MARIA ROSALBA ALVARADO-MCTAGUE ) | |
| *et al.* ) | |

### AFFIDAVIT OF SPECIAL AGENT TAMI KETCHAM

I hereby swear and affirm as follows:

1. I am a Special Agent with the Department of Homeland Security, Homeland Security Investigations. I am one of the lead agents for the above-captioned case and have been heavily involved in the investigation of this case.

2. On December 12, 2014, law enforcement executed search warrants at the home of Maria Rosalba Alvarado ("Alvarado") and Felix Chujoy ("F. Chujoy"), located at 469 Eastover Drive; at Alvarado's rental home at 452 Cardinal Drive; and at the restaurant, Inca's Secret, all in Harrisonburg, Virginia.

3. After the indictment of Alvarado and F. Chujoy in December 2014, law enforcement and a federal grand jury continued to investigate the defendants for labor trafficking and other charges.

4. On March 18, 2015, law enforcement executed search warrants at the home of Alvarado at 469 Eastover Drive and at the apartment of Gladys Chujoy ("G. Chujoy") located at 1014 Blue Ridge Drive, both in Harrisonburg, Virginia.

1

5.       After indictment of Alvarado, F. Chujoy, and G. Chujoy by a federal grand jury in March 2015, law enforcement continued to investigate the three individuals, as well as prepare for trial in the above-captioned case, including interviewing various witnesses.

6.       Based on prior witness statements and cellphone records, law enforcement involved in this case believe that Alvarado and F. Chujoy tampered with witnesses, in part, by borrowing the telephones and cellphones of their friends and communicating with the witnesses in this manner to hide their communications from law enforcement. Agents have interviewed individuals closely associated with the defendants, whose cellphone numbers appear in the call detail records of government witnesses, such as Donald Smith, Carolyn Edlind, Yuri Jung, and Michael ("Mike") Kwiatkowski.

7.       In particular, on May 21, 2015, after prior attempts to do so, Special Agent Anthony Woodard and I interviewed Carolyn Edlind and, at the conclusion of the interview, served her with a subpoena to testify at trial in the above-captioned case. Among other statements, in her interview, Edlind stated that Alvarado's accountant was bad but did not mention that she heard this information from Alvarado and F. Chujoy after their December 2014 arrest, or that she had discussed this information with any other witnesses. During the interview, we also extensively questioned Edlind about her knowledge of Inca's Secret and its former employees. Edlind mentioned that she would provide minimal help at the restaurant on occasion. During the interview, Edlind stated that she never discussed immigration issues with Alvarado or others, except a conversation with Alvarado when the restaurant opened in 2007 where Alvarado acknowledged that the legal status of the workers.

8.       On May 27, 2015, Special Agent David Liu and I interviewed Deputy Donald Smith, who is a sworn Deputy Sheriff with Augusta County and was recently elected sheriff. On

2

Case 5:14-cr-00055-MFU   Document 282-1   Filed 11/23/15   Page 2 of 6   Pageid#: 1893
Case 5:15-cr-00029-MFU   Document 32-1   Filed 11/23/15   Page 34 of 40   Pageid#: 229

June 10, 2015, Special Agent Woodard and I served Deputy Smith with a subpoena to testify at trial in matter and asked him additional questions.

9. I have subpoenaed Deputy Smith to testify at the June 22, 2015, October 26, 2015, and December 1, 2015 trials. My understanding from Deputy Smith is that he has not been subpoenaed by any other party.

10. During the interviews with Edlind and Smith (and other witnesses), another agent or I took handwritten notes during and/or after the interviews.

11. Prior to the June 2015 trial date, I contact both Edlind and Smith and asked if they would meet with Assistant United States Attorney Heather Carlton so that she could help prepare them for trial in this matter. Both individuals refused at the United States Attorney's Office.

12. During the investigation in this case, I interviewed Leonel Fuentes, who is the accountant for Alvarado and/or Inca's Secret. I have also served a subpoena for records on Mr. Fuentes and have obtained files from him.

13. On August 25, 2015, at the invitation of his counsel and in the presence of his counsel, AUSA Carlton and I interviewed an individual incarcerated at the Rockingham County Jail. During the interview, the inmate indicated that the inmate and others had loaned F. Chujoy their PIN numbers, so that F. Chujoy could place telephone calls from the jail under their names when he was incarcerated there from March to June 2015. From prior investigations and other sources, I understand that inmates will loan each other their PIN numbers in order to avoid detection of those calls by law enforcement, knowing that telephone calls are recorded and logged by an inmate's PIN number.

14. Based on this information, I requested from the Rockingham County Jail copies of any recorded telephone calls placed to the telephone numbers of certain government witnesses

3

Case 5:14-cr-00055-MFU   Document 282-1   Filed 11/23/15   Page 3 of 6   Pageid#: 1894
Case 5:15-cr-00029-MFU   Document 32-1   Filed 11/23/15   Page 35 of 40   Pageid#: 230

in the above-captioned case. In response, the Rockingham County Jail provided copies of eleven recorded telephone calls a several days later. I have reviewed each of those telephone calls on multiple occasions. Of those eleven calls, nine calls are copies of recorded telephone conversations between F. Chujoy and Deputy Smith that occurred from May to June 2015, as follows:

    a. In a call dated May 10, 2015, Smith agreed to pay bills for F. Chujoy. F. Chujoy asked if Smith had received a letter from him and asked for his advice based on what was contained in the letter. The advice appears to be related to F. Chujoy's criminal case.

    b. In a call dated May 29, 2015, Smith told F. Chujoy that "they came after me this week". F. Chujoy asked what was said during the interview. Smith relayed some of the content of his interview with federal agents to F. Chujoy. F. Chujoy states that he will write Smith, but for Smith not to write F. Chujoy.

    c. In a call dated June 2, 2015, F. Chujoy asked Smith to contact a witness and have the witness come by the jail to see him this weekend. F. Chujoy tells Smith that Mike is the reason federal agents called Smith and that he wanted Smith to know. F. Chujoy told Smith to contact Mike if Smith wanted to know more.

    d. In a call dated June 5, 2015, F. Chujoy asked if Smith received his letter, which Smith confirmed that he had. Smith indicated that he did not get the letter about Mike. Smith asked if he needed to go talk to Mike. F. Chujoy told Smith to see Mike after he received F. Chujoy's letter and after Smith spoke to F. Chujoy's "aunt," because F. Chujoy put more details into his letter to his aunt. F. Chujoy stated that Mike has the wrong information and that Mike did not understand when F. Chujoy was joking. F. Chujoy wanted Smith to clarify this with Mike. Smith stated that he had not heard from Mike, Christina, or Yuri. Smith told F. Chujoy

4

that the federal agents had asked him about "all of that stuff and he said he did not have a clue." F. Chujoy was surprised Smith talked to federal agents because Smith had told him he was not going to talk to them. Smith said he did not tell them anything and that he did not say certain things. Smith relayed to F. Chujoy that he had checked on G. Chujoy at his request. F. Chujoy asked Smith to "clarify" with Mike or get him to "come into town."

    e. In a call dated June 8, 2015, F. Chujoy wanted to know if Smith had spoken to G. Chujoy and "what she was telling him." F. Chujoy asked Smith to reach out to Yuri. F. Chujoy asked if he had heard from anyone else.

    f. In a call dated June 13, 2015, F. Chujoy asked if Smith had received his letter. Smith told F. Chujoy he had been subpoenaed to come to court. Smith stated that they wanted to know who at Christmas time was using his cellphone, and Smith said he did not know. Smith said they wanted to know if he speaks Spanish and who used his cellphone.

    g. In a call dated June 14, 2015, Smith stated that he had not received a letter from F. Chujoy yet. F. Chujoy stated that, in addition to the letter, he wants Smith to remember that F. Chujoy used to text and call everyone from everyone's cellphone because he had a crappy phone and could barely hear. Smith told F. Chujoy that he had already said they took his cellphone. F. Chujoy stated that it was hard to text on that cellphone.

    h. In a call dated June 16, 2015, F. Chujoy asked Smith if he had received the letter.

    i. In a call dated June 20, 2015, F. Chujoy asked Smith if he had received the letter.

15.     One call is a recorded telephone call between Defendant F. Chujoy and Yuri Jung. Jung is a friend of F. Chujoy and has been repeatedly subpoenaed by the United States to testify at trial in the above-captioned case.

16. Edlind did not mention any jail calls with F. Chujoy or letters to/from F. Chujoy during my interview with her in May 2015. Smith stated that he received one telephone call from F. Chujoy in March 2015 about picking up his mail, but did not mention any other telephone calls or any jail letters to/from F. Chujoy at either of his interviews in May and June 2015.

17. In September 2015, I served both Smith and Edlind with subpoenas to testify before a federal grand jury about potential witness tampering by F. Chujoy.

18. On October 6, 2015, Smith and Edlind testified before a federal grand jury.

19. On October 20, 2015, I testified before the same federal grand jury as Edlind and Smith on October 6. I testified regarding jail calls, text messages, recorded conversations, and other physical evidence obtained before and during the grand jury investigation into potential witness tampering by F. Chujoy.

I affirm that the above statements are true.

_____, HSI SA        11/23/2015
Special Agent Tami Ketcham        Date

6

Case 5:14-cr-00055-MFU   Document 282-1   Filed 11/23/15   Page 6 of 6   Pageid#: 1897
Case 5:15-cr-00029-MFU   Document 32-1   Filed 11/23/15   Page 38 of 40   Pageid#: 233