IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
HARRISONBURG DIVISION

CLERKS OFFICE US DISTRICT COURT
AT HARRISONBURG, VA
FILED

11/10/2025

LAURA A. AUSTIN, CLERK
BY: /s/ Amy Fansler
DEPUTY CLERK

| | |
|---|---|
| SAMUEL JOSEPH ORLANDO, | ) |
| | ) |
| Plaintiff, | ) Case No. 5:22-cv-062 |
| | ) |
| v. | ) By:   Michael F. Urbanski |
| | ) Senior United States District Judge |
| SHERIFF DONALD L. SMITH, | ) |
| | ) |
| Defendant. | ) |

## MEMORANDUM OPINION

This matter is before the court on defendant Sheriff Donald L. Smith's motion to dismiss plaintiff Samuel Orlando's amended complaint. Mot. to Dismiss, ECF No. 168. After dismissing Orlando's other claims, in an order entered on April 30, 2025, the court granted Orlando leave to amend his complaint with regard to his First Amendment retaliation claim only. Order, ECF No. 165. The order allowed Orlando the opportunity to file an amended complaint that would include facts supporting a condonation, ratification, or personal participation theory as to Smith's involvement in the seizure of the protest materials at issue in this case. Although Orlando filed an amended complaint, ECF No. 167, its allegations are insufficient to state a First Amendment retaliation claim against Smith. Accordingly, Smith's motion to dismiss is **GRANTED**.

   I.   Background

Plaintiff Orlando identifies as a political activist who is outspoken about police accountability. Am. Compl., ECF No. 167 ¶ 4. Defendant Smith is the elected sheriff of Augusta County, Virginia and is a frequent subject of Orlando's criticism. Id. ¶ 5-6. Orlando

1

distributes "anti-Sheriff" materials, maintains a protest website, and organizes demonstrations against Smith. Id. ¶ 6. Orlando alleges that he creates "posters, placards, stickers, flyers, [and] documents concerning alleged misconduct by Defendant Smith" and keeps these "protest-related materials" at his residence. Id. ¶ 9.

On October 5, 2022, deputies from the Augusta County Sheriff's Office executed two search warrants at an address where Orlando resided with his guardians. Id. ¶ 10. The deputies who applied for and executed the warrants were "under the direct command of Defendant Sheriff Smith." Id. ¶ 25. The search warrants sought evidence of unrelated criminal activity by others and did not authorize seizure of the "protest-related materials." The first search warrant authorized the search and seizure of a variety of electronic devices. Id. ¶ 11. The second search warrant authorized the search and seizure of electronic devices that may have been used to communicate with specified corporate entities, as well as "statements, correspondence, ledgers, files or writing associated with the aforementioned entities." Id. ¶ 12. Orlando alleges that the deputies' inventory list of items taken from his residence includes "assorted paper documents" and "Misc. Documents," and it is his belief that some of those miscellaneous documents were not associated with the corporate entities. Id. ¶ 14.

By alleging that some of the seized documents were outside the scope of the search warrants, Orlando's amended complaint asks the court to infer that the deputies seized his protest-related materials along with the other documents. Orlando claims that the deputies were wearing body cameras, and that, upon information and belief, the cameras captured video recording of the seizure of protest materials and documents. Id. ¶ 16-17. Presuming that the body camera footage had audio, Orlando "asserts that, pursuant to Fed. R. Civ. P. 11(b)(3),

2

deputies informed the Sheriff or indicated that they would inform the Sheriff that they saw and seized protest materials that harshly criticized him." Id. ¶ 19.

Orlando alleges that the search warrants were related to local investigations by the Augusta County Sheriff's Office, so as a result, "Defendant Sheriff Smith had to exercise control over the documents for the purpose of reviewing, assessing, and providing an outcome" for the local investigations. Id. ¶ 29.

A few days after the execution of the search warrant, Orlando alleges that he "directly confronted Defendant Sheriff Smith during a protest outside the Augusta County Sheriff's Office." Id. ¶ 21. Through a megaphone, Orlando accused Smith of taking the protest materials from his home and demanded their return. Id. Orlando alleges that Smith "stood visibly at the side of the building, observing the protest, and briefly interacted with Mr. Orlando before departing in his official SUV as chants continued." Id. Smith did not return any protest materials. Id.

The sole cause of action in the amended complaint is a claim under 42 U.S.C. § 1983 against Smith in his individual capacity for retaliation in violation of the First Amendment. The amended complaint asserts that the violation occurred in two ways: Smith's refusal "to return seized protest materials upon demand," and Smith's actions that involved "ordering, condoning, and/or ratifying the taking of protest materials from Mr. Orlando's residence." ECF No. 167 ¶ 31. Orlando seeks money damages for this alleged violation of his civil rights.

Smith moves to dismiss the amended complaint for failure to state a claim for six reasons: 1) the claim is time-barred, 2) Orlando failed to adequately allege personal involvement of Smith, 3) the failure to return protest materials is not a materially adverse

3

action sufficient to support a retaliation claim, 4) Orlando has failed to allege his protest materials were taken without probable cause, 5) Smith does not have the legal authority to return evidence seized under a search warrant, and 6) Smith is entitled to qualified immunity.

## II. Standard of Review

To survive a motion to dismiss, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id. "But where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—'that the pleader is entitled to relief.'" Id. at 679 (quoting Fed. R. Civ. P. 8(a)(2)).

A court must consider all well-pleaded allegations in a complaint as true and construe them in the light most favorable to the plaintiff. Wikimedia Found. v. Nat'l Sec. Agency, 857 F.3d 193, 208 (4th Cir. 2017). Nevertheless, a court is not required to accept as true "a legal conclusion couched as a factual allegation," Papasan v. Allain, 478 U.S. 265, 286 (1986); conclusory allegations devoid of any reference to actual events, United Black Firefighters of Norfolk v. Hirst, 604 F.2d 844, 847 (4th Cir. 1979); or "allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences," Veney v. Wyche, 293 F.3d 726, 730 (4th Cir. 2002) (quoting Sprewell v. Golden State Warriors, 266 F.3d 979, 988 (9th Cir. 2001)).

## III. Discussion

4

**A. Statute of Limitations**

Smith argues that the amended complaint should be barred on statute of limitations grounds, and even if the amended complaint could be viable due to relation back, Smith asserts that the new facts in the amended complaint do not relate back to the original complaint.

Amendments made after the statute of limitations has run relate back to the date of the original pleading if the original and amended pleadings arise out of the same "conduct, transaction, or occurrence set out—or attempted to be set out—in the original pleading." Fed. R. Civ. P. 15(c)(2); see Mayle v. Felix, 545 U.S. 644, 655 (2005). "Rule 15(c)(2) relaxes, but does not obliterate, the statute of limitations; hence relation back depends on the existence of a common core of operative facts uniting the original and newly asserted claims." Id. at 659 (internal citations omitted).

In deciding whether an amended complaint relates back to an earlier complaint, courts employ a two-step inquiry: "First, to relate back there must be a factual nexus between the amendment and the original complaint . . . Second, if there is some factual nexus, an amended claim is liberally construed to relate back to the original complaint if the defendant had notice of the claim and will not be prejudiced by the amendment." Grattan v. Burnett, 710 F.2d 160, 163 (4th Cir. 1983).

Here, while the filing date of the amended complaint may fall outside the statute of limitations,[1] the events described in the amended complaint arise from the same factual nexus

---

[1] There is no federal statute of limitations for § 1983 claims, so the state limitations period governing personal injury actions is applied. See Lewis v. Richmond City Police Dep't, 947 F.2d 733, 735 (4th Cir. 1991). Virginia has a two-year statute of limitations for personal injury claims. Va. Code Ann. § 8.01-243(A). Smith argues that since the search and seizure at issue occurred on October 5, 2022, the statute of limitations for any § 1983 claim relating to that event expired two years later, on October 5,

5

alleged in the original complaint. In fact, the First Amendment retaliation claim appeared in the original complaint, and the court specifically granted Orlando leave to amend his complaint to add facts regarding the retaliation claim. See Order, ECF No. 165. Smith had notice of the nature of the claim from the original complaint and is not prejudiced by the amendment.

Because the amended complaint relates back to the original complaint, Orlando's claim is not time-barred.

### B. Sufficiency of First Amendment Retaliation Claim

To state a claim under 42 U.S.C. § 1983 ("Section 1983") based on First Amendment retaliation, "a plaintiff 'must allege that (1) []he engaged in protected First Amendment activity, (2) the defendant[] took some action that adversely affected [his] First Amendment rights, and (3) there was a causal relationship between [his] protected activity and the defendant['s] conduct.'" Martin v. Duffy, 858 F.3d 239, 249 (4th Cir. 2017) (quoting Constantine v. Rectors & Visitors of George Mason Univ., 411 F.3d 474, 499 (4th Cir. 2005)).

Orlando has sufficiently alleged that he engaged in protected First Amendment activity. "The First Amendment guarantees an individual the right to speak freely, including the right to criticize the government and government officials." Trulock v. Freeh, 275 F.3d 391, 404 (4th Cir. 2001) (citing New York Times v. Sullivan, 376 U.S. 254, 273 (1964)). "Protests, websites, and other advocacy are unambiguously speech protected by the First Amendment." Orlando v. Smith, No. 5:22-cv-62, 2024 WL 4831880, at *8 (W.D. Va. Nov. 19, 2024) (citing

---

2024, but the amended complaint was filed on May 5, 2025. However, "Rule 15(c) must be understood to freely permit amendment of pleadings and their relation-back so long as the policies of statutes of limitations have been effectively served." Goodman v. Praxair, Inc., 494 F.3d 458, 468 (4th Cir. 2007).

6

Snyder v. Phelps, 562 U.S. 443, 451-52 (2011) (protecting controversial protest speech and noting that "speech on public issues occupies the highest rung of the hierarchy of First Amendment values, and is entitled to special protection")). Orlando's amended complaint alleges that he continues to be "a vocal critic of Sheriff Smith, maintain[s] a protest website, distribut[es] anti-Sheriff materials, and organiz[es] demonstrations directly against Sheriff Smith." ECF No. 167 ¶ 6. As these activities are protected by the First Amendment, Orlando has plausibly alleged that he engaged in protected First Amendment activity.

"For purposes of a First Amendment retaliation claim under Section 1983, a plaintiff suffers adverse action if the defendant's allegedly retaliatory conduct would likely deter a person of ordinary firmness from the exercise of First Amendment Rights." Martin v. Duffy, 858 F.3d 239, 249 (4th Cir. 2017) (internal quotations omitted). "A plaintiff's actual response to the retaliatory conduct is not dispositive of the question of whether such action would likely deter a person of ordinary firmness." Id. at 250. Even though Orlando alleges that he protested again outside the Augusta County Sheriff's Office only a few days after the seizure of his protest materials, ECF No. 167 ¶ 21, "a person of ordinary firmness" would likely be deterred from exercising their First Amendment rights due to "the message sent by police seizing protest materials in particular." Orlando v. Smith, No. 5:22-cv-62, 2024 WL 4831880, at *8 (W.D. Va. Nov. 19, 2024). Orlando's actual response is not dispositive.

While the seizure of Orlando's protest materials beyond the scope of the warrant plausibly alleges adverse action in violation of the First Amendment by the deputies, the amended complaint fails against Smith because there is no allegation that Smith participated in, authorized, or condoned the seizure. Orlando's amended complaint does not allege that

7

Smith directly participated in the seizure of the protest materials during the execution of the search warrant, as Smith was not present at the scene. Orlando has not alleged facts that indicate that Smith ordered, directed, or authorized the seizure of the protest materials.[2] Nor is it alleged that Smith had any reason to believe that the deputies executing the warrants would seize protest materials. Rather, the only conduct Orlando alleges Smith personally participated in was his failure to return the protest materials upon request. See ECF No. 167 ¶ 23 ("Sheriff Smith did not return any of the protest materials despite knowledge of Mr. Orlando's allegation that protest materials were seized and despite Mr. Orlando demanding that Defendant Sheriff Smith return said protest materials."). But the constitutional injury in this case stemmed from the seizure of the protest materials, not the failure to return them after they had been seized.

To the extent Orlando asks the court to find that Smith's failure to return the seized protest materials is the adverse action, Orlando still fails to state a claim for First Amendment retaliation. In order to regain possession of property that has been allegedly unlawfully seized during a search, a person may move the court to return the seized property. Va. Code Ann. § 19.2-60.[3] The court, not the Sheriff, has the ability to determine whether to return the seized

---

[2] Orlando's amended complaint speculates that body camera footage could have audio with possible communication between Smith and the deputies conducting the search, in which the deputies informed Smith of the existence of the protest materials and Smith either directed the deputies to seize them or failed to stop the deputies from seizing them. See ECF No. 167 ¶ 17-18. Orlando's speculation does not rise to the level of plausibility required by Ashcroft v. Iqbal. 556 U.S. 662, 678 (2009) ("The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully. Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of entitlement to relief.'" (citing Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 556-57 (2007))).

[3] "A person aggrieved by an allegedly unlawful search or seizure may move the court to return any seized property and to suppress it for use as evidence. . . If the motion is granted by a court of record,

8

property. See United States v. Jenkins, 149 F. App'x 129, 130 (4th Cir. 2005) ("[B]ecause Jenkins failed to formally move for the return of his property as required by state law, he had no right to the return of his property."). There is no allegation that Orlando made any motion to regain possession of his property. Even if Smith had the authority to return material seized pursuant to the search warrant, his failure to accede to Orlando's request that he do so does not rise to the level of a constitutionally adverse action. Thus, Orlando has not sufficiently alleged that Smith personally engaged in conduct that adversely affected Orlando's First Amendment rights.

### C. Supervisory Liability

Orlando also seeks to assert § 1983 liability against Smith based on Smith's supervisory role as Sheriff. But § 1983 liability may be imposed only on the basis of a defendant's "direct culpability." McWilliams v. Fairfax Cnty. Bd. of Supervisors, 72 F.3d 1191, 1197 (4th Cir. 1996) (supervisors may not be held liable under § 1983 for actions of subordinate employees unless the supervisors have "direct culpability" in causing the plaintiff's injuries), overruled on other grounds by, Oncale v. Sundowner Offshore Servs., Inc., 523 U.S. 75 (1998). "Because vicarious liability is inapplicable to . . . [Section] 1983 suits, a plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution." Ashcroft v. Iqbal, 556 U.S. 662, 676 (2009); see also McWilliams, 72 F.3d at 1197 (citing Monell v. Dep't of Soc. Servs. of the City of New York, 436 U.S. 658, 692-94 (1978)) ("[P]rinciples of respondeat superior do not apply in imposing liability under § 1983.").

---

any seized property shall be restored as soon as practicable unless otherwise subject to lawful detention, and such property shall not be admissible in evidence at any hearing or trial." Va. Code Ann. § 19.2-60.

9

Standing alone, the fact that a defendant supervised a subordinate employee who allegedly violated a plaintiff's rights is "insufficient as a matter of law" to state a plausible claim against a supervisor for constitutional tort liability. Danser v. Stansberry, 772 F.3d 340, 349 (4th Cir. 2014) (citing Iqbal, 556 U.S. at 676). Mere knowledge of a constitutional violation does not suffice to establish personal liability under § 1983. See Williamson v. Stirling, 912 F.3d 154, 171 (4th Cir. 2018). However, a supervisor may be liable for unconstitutional conduct carried out by subordinates based on the supervisor's own actions "directly authorizing [the unconstitutional conduct] or by expressly or tacitly condoning by inaction a known pattern of comparable coworker conduct." McWilliams, 72 F.3d at 1197.

There are no facts alleged in the amended complaint that Smith directly authorized the seizure of the protest materials. While the deputies that executed the search of Orlando's home may have been under Smith's command, Smith is not liable for the deputies' actions merely because he is their supervisor.

Under a condonation theory, individual supervisors can be held liable where the plaintiff proves the following elements:

> (1) that the supervisor had actual or constructive knowledge that his subordinate was engaged in conduct that posed "a pervasive and unreasonable risk" of constitutional injury to citizens like the plaintiff; (2) that the supervisor's response to that knowledge was so inadequate as to show "deliberate indifference to or tacit authorization of the alleged offensive practices,"; and (3) that there was an "affirmative causal link" between the supervisor's inaction and the particular constitutional injury suffered by the plaintiff.

Shaw v. Stroud, 13 F.3d 791, 799 (4th Cir. 1994) (internal citations omitted).

To plead the first element, a plaintiff must allege "that the conduct is widespread, or at least has been used on several different occasions and that the conduct engaged in by the subordinate poses an unreasonable risk of harm of constitutional injury." Wilkins v. Montgomery, 751 F.3d 214, 226 (4th Cir. 2014) (citing Shaw, 13 F.3d at 799). "As to the second element, a plaintiff may establish deliberate indifference by demonstrating a supervisor's continued inaction in the face of documented widespread abuses." Wilkins, 751 F.3d at 226. Finally, for the third element, "causation is established when the plaintiff demonstrates an affirmative causal link between the supervisor's inaction and the harm suffered by the plaintiff." Shaw, 13 F.3d at 799.

Here, Orlando's amended complaint does not set forth sufficient factual allegations to satisfy these elements. There are no facts indicating that Smith had knowledge that the deputies would seize the protest materials. Orlando's complaint asserts that the body cameras worn by the deputies during the search imply that "the deputies informed the Sheriff or indicated that they would inform the Sheriff that they saw and seized protest materials that harshly criticized him." ECF No. 167 ¶ 19. Orlando contends that the body cameras presumably had recorded audio from the search which "could demonstrate Sheriff Smith's knowledge of the alleged taking at the time it was actually occurring or immediately thereafter." Id. Orlando further asserts that he confronted Smith during a protest after the search and seizure of the materials from Orlando's home, demanding the return of the materials. Id. ¶ 21. Orlando invites the court to conclude that Smith had knowledge of the seized materials because Orlando demanded that Smith return the materials. Id. ¶ 21-24.

11

But to adequately plead the first element, Orlando would need to point to Smith's knowledge of "widespread conduct" or "conduct [that] has been used on several different occasions" by Smith's subordinates that poses a risk of constitutional injury. See Wilkins, 751 F.3d at 226. Even if Smith was aware of the deputies' seizure of the protest materials after the search warrant was executed, there are no allegations that Smith's deputies had engaged in this type of conduct "on several different occasions" or that Smith had reason to know that his deputies would seize protest materials while executing a search warrant investigating unrelated criminal activity. In other words, even if the court infers that Orlando's demand for the return of the protest materials put Smith on notice that his deputies seized those materials during the search, mere knowledge of a constitutional violation does not suffice to establish personal liability. See Williamson, 912 F.3d at 171.

For the second element, Orlando has failed to plead facts showing that Smith was deliberately indifferent to the risk of constitutional violations or demonstrated "continued inaction in the face of documented widespread abuses." Wilkins, 751 F.3d at 226. The Fourth Circuit has acknowledged that a plaintiff assumes "a heavy burden" in supervisory liability cases because "he cannot satisfy his burden of proof by pointing to a single incident or isolated incidents." See Shaw, 13 F.3d at 799. Here, there are no allegations of similar "abuses" other than those that provide the basis for this amended complaint—the seizure of protest materials during the execution of a search warrant at Orlando's residence.

Orlando also cannot show that Smith tacitly authorized the deputies' actions during the search. "A supervisor may be held liable under a tacit authorization theory if that supervisor fails to take action in response to a known pattern of comparable conduct occurring

12

before the incident at issue took place." Danser v. Stansberry, 772 F.3d 340, 350 (4th Cir. 2014) (emphasis added). While Orlando would have the court infer that Smith's failure to investigate the seizure or Smith's refusal to return the protest materials after Orlando confronted him constitutes tacit authorization for the deputies' actions, this interpretation is not in line with the "tacit authorization theory." Therefore, Orlando cannot adequately plead the second element of supervisory liability.

Finally, Orlando has not alleged a causal link between Smith's purported inaction and Orlando's injuries. To establish that a supervisor is liable under § 1983 for the conduct of his subordinates, a plaintiff must demonstrate "an 'affirmative causal link' between the supervisor's inaction and the particular constitutional injury suffered by the plaintiff." Shaw v. Stroud, 13 F.3d 791, 799 (4th Cir. 1994). Such an affirmative causal link cannot be based on conduct post-dating the constitutional injury. See Davis v. York Cnty. Bd. of Supervisors, No. 4:17cv39, 2017 U.S. Dist. LEXIS 213575, at *6 (E.D. Va. Sept. 7, 2017) ("[Because the third prong requires "a causal link" between the supervisor's inaction and the alleged injury, after-the-fact knowledge will not suffice.").

Here, Orlando's claimed constitutional injury occurred when his protest materials were seized. Smith's alleged failure to investigate that seizure after the fact cannot be said to have caused the seizure, and neither can Smith's failure to return the protest materials to Orlando after the search was completed. See Wall v. Clarke, No. 7:19-cv-260, 2021 WL 5444754, at *8 (W.D. Va. Nov. 22, 2021) ("Defendants correctly contend that the failure to take remedial action after an alleged constitutional violation does not cause or contribute to such violation or otherwise provide a basis for liability under § 1983." (emphasis in original)).

13

Therefore, Orlando's amended complaint does not adequately allege that Smith can be held liable under § 1983 on a theory of supervisory liability.

### D. Qualified Immunity

Finally, Smith argues that he should be entitled to qualified immunity because failure to return seized property does not violate a clearly established right. The court agrees.

"Qualified immunity protects government officials from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." Cannon v. Vill. of Bald Head Island, N.C., 891 F.3d 489, 497 (4th Cir. 2018) (citing Pearson v. Callahan, 555 U.S. 223, 231 (2009)). "To overcome qualified immunity, a plaintiff must show (1) that the official violated a statutory or constitutional right, and (2) that the right was clearly established at the time of the challenged conduct." Cannon, 891 F.3d at 497 (citing Ashcroft v. al-Kidd, 563 U.S. 731, 735 (2011)). "A constitutional right is clearly established when its contours are sufficiently clear that a reasonable official would understand that what he is doing violates that right." Cannon, 891 F.3d at 497 (internal citations omitted).

Here, the failure to return the protest materials after they had been seized is not a violation of any clearly established statutory or constitutional right. As noted, the Fourth Circuit has stated that a criminal defendant has no right to the return of his property when he has not formally moved for the return of the property as required by state law. See United States v. Jenkins, 149 F. App'x at 130; Va. Code Ann. §§ 19.2-58, 19.2-60. Other courts have held that the failure to return seized property does not constitute a second seizure in violation of the Fourth Amendment. See Lee v. Chicago, 330 F.3d 456, 466 (7th Cir. 2003) ("Once an

14

individual has been meaningfully dispossessed, the seizure of the property is complete . . . The [Fourth] [A]mendment then cannot be invoked by the dispossessed owner to regain his property."); Fox v. Van Oosterum, 176 F.3d 342, 351 (6th Cir. 1999) ("[T]he Fourth Amendment protects an individual's interest in retaining possession of property but not the interest in regaining possession of property.").

Furthermore, even if the failure to return the seized materials does implicate the Fourth Amendment, the right is not sufficiently clearly established to permit suit under § 1983. See Mom's Inc. v. Willman, 109 F. App'x 629, 637 (4th Cir. 2004) (holding that an officer who stole a wristwatch during the execution of a search warrant was entitled to qualified immunity because "she should have recognized that this was a tort, a crime, and even a sin, but [s]he had no clear notice that this action violated the United States Constitution"); Saunders v. Baltimore City Police Dep't, No. CCB-19-551, 2020 WL 1505697, at *4-5 (D. Md. 2020) (acknowledging that the existence of a circuit split on whether a police officer's failure to return lawfully seized property implicates the Fourth Amendment indicates that the right is not clearly established for qualified immunity purposes).

While the initial seizure of Orlando's protest materials by the deputies may implicate the First Amendment, Orlando does not allege that Smith personally was involved in that seizure. Smith was not present during the execution of the search warrant and seized nothing from the residence where Orlando lived. There is no allegation that Smith directed or authorized the seizure of the protest materials or had any reason to believe the deputies would seize protest materials beyond the scope of the warrant. The existence of body cameras on the deputies executing the warrant leads Orlando to allege, upon information and belief, that

15

Smith may have learned of the presence of protest materials. But this allegation is as speculative as it is conclusory. Orlando has alleged no facts, beyond speculation and conjecture, to support a First Amendment retaliation claim against Smith. As such, Orlando falls short of plausibly alleging that Smith violated a clearly established constitutional or statutory right.

Thus, even had Orlando's amended complaint plausibly alleged a First Amendment retaliation claim, which it does not, Smith would be entitled to qualified immunity.

## IV. Conclusion

In sum, Orlando fails to plausibly allege facts that Smith personally participated in the seizure of Orlando's protest materials or could be liable under § 1983 as a supervisor. In addition, the doctrine of qualified immunity bars this claim. Accordingly, the court **GRANTS** defendant's motion to dismiss plaintiff's action for failure to state a claim upon which relief can be granted pursuant to Fed. R. Civ. P. 12(b)(6).

An appropriate order dismissing this case in its entirety will be entered.

Entered: November 10, 2025

Michael F. Urbanski
U.S. District Judge
2025.11.10 12:01:15
-05'00'

Michael F. Urbanski
Senior United States District Judge